974 A.2d 1031

SEBASTIAN FERNANDEZ, PLAINTIFF–APPELLANT, v. NATION-WIDE MUTUAL FIRE INSURANCE COMPANY, DEFENDANT–RESPONDENT, AND PROFORMANCE INSURANCE COMPANY, DEFENDANT.

Argued April 27, 2009—Decided July 16, 2009.

*Dennis J. Drasco*, argued the cause for appellant (*Lum, Drasco & Positan*, attorneys; *Mr. Drasco* and *Kevin J. O'Connor*, on the briefs).

*Christine M. Mercado*, argued the cause for respondent (*Richard D. Millet & Associates*, attorneys).

*Peggy Sheahan Knee*, submitted a brief on behalf of *amicus curiae* New Jersey State Bar Association (*Ms. Knee*, President, and *Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins*, attorneys; *Ms. Knee, Eric G. Kahn, Annabelle M. Steinhacker*, and *Amirali Y. Haidri*, on the brief).

PER CURIAM.

The judgment of the Appellate Division is affirmed substantially for the reasons expressed in the thorough and thoughtful opinion by Judge Gilroy. *Fernandez v. Nationwide Mut. Fire Ins. Co.*, 402 *N.J.Super.* 166, 952 *A.*2d 1156 (App.Div.2008). As the panel aptly concluded, this matter is governed by the principles previously set forth in *Knox v. Lincoln General Insurance Co.*, 304 *N.J.Super.* 431, 701 *A.*2d 445 (App.Div.1997), and reaffirmed in *David v. Government Employees Insurance Co.*, 360 *N.J.Super.* 127, 821 *A.*2d 564 (App.Div.), *certif. denied*, 178 *N.J.* 251, 837 *A.*2d 1094 (2003). Applying that precedent to the instant matter required that the cost of providing PIP benefits to the victim be

borne by the insurer of the responsible party, here the tortfeasor. We add only the following.

Unlike our colleagues in the dissent, we are not persuaded that there is a compelling policy need or statutory basis to justify reinterpretation of the No–Fault Law,[1] specifically *N.J.S.A.* 39:6A–9.1, to achieve a result different from that reached by the appellate panel. The Appellate Division's decision correctly held that the insurer of the responsible party, and not the injured victim's insurer, was liable for the expense of PIP benefits for the victim. Simply because that conclusion diminishes the total amount available to the victim from the tortfeasor's policy of insurance does not produce an unjust result. Rather, that conclusion advances stability in the insurance marketplace by requiring that the ultimate cost of PIP benefits be borne by the insurer of the responsible party, not by the insurer of the victim. That result has been the controlling application of the No–Fault Law in this state for more than a decade, undisturbed by any legislative disapproval. It is sophistic to declare that interpretation to be suddenly unreasonable or contradictory to the No–Fault Law as presently written.

We recognize that the Legislature may decide that a different policy is preferable and may alter the law; that is its province. Until that occurs, we affirm the Appellate Division's application of settled law in this matter.

Justice LONG, dissenting.

Broadly described, *N.J.S.A.* 39:6A–9.1 provides that an insurer may recover, from a tortfeasor, personal injury protection (PIP) benefits paid to its insured as a result of an automobile accident. The issue presented in this case is straightforward: whether the statute authorizes reimbursement to the PIP carrier when the tortfeasor's policy is insufficient to cover the insured's total damages. In other words, who bears the loss when either the insured

---

[1] New Jersey Automobile Reformation Reform Act, *N.J.S.A.* 39:6A–1 to –35.

or the insurer will come up short? In my opinion, the Legislature intended the carrier to be reimbursed for its PIP payments only to the extent that the proceeds of the tortfeasor's policy exceed the full amount of the insured's damages for all claims.

The Court today approves a contrary paradigm that gives the carrier a priority over its insured where the tortfeasor's policy is inadequate to make the insured whole, effectively paying the carrier out of the insured's funds. The effect of the Court's opinion in practical terms is that an innocent victim of a car accident who incurs $500,000 in medical expenses and receives $250,000 in PIP payments will have no recourse against a tortfeasor's $250,000 liability policy because that policy will be used to satisfy the victim's PIP carrier. Accordingly, the victim will sustain a medical expense loss of $250,000 while his carrier will be made whole.

Because that conclusion cannot be squared with the legislatively declared reparation goals of our no-fault statutes, alters the fundamental nature of the insurance contract, and will have the cruel effect of impoverishing innocent accident victims, I respectfully dissent.

I.

On February 4, 2004, plaintiff, Sebastian Fernandez, was critically and permanently injured in an accident when the automobile he was driving was struck by a commercial vehicle operated by Peter Garafalo and owned by Go Pro Waste Services, Inc. ("Go Pro"). Fernandez was insured under a policy issued by defendant Nationwide Mutual Fire Insurance Company ("Nationwide"), and Garafalo and Go Pro, under a $1,000,000 liability policy issued by defendant Proformance Insurance Company ("Proformance"). There are no liability issues in the case and thus no need recount the details of the accident.

Fernandez's total medical expenses were $591,269.62, of which Nationwide paid approximately $250,000. Both Fernandez and Nationwide sought to recover their losses through concurrent

proceedings. On April 20, 2004, Fernandez filed suit against Garafalo and Go Pro. That case was submitted to non-binding arbitration pursuant to *N.J.S.A.* 39:6A–25(b).

In the meantime, Nationwide filed an inter-company arbitration action against Proformance for reimbursement of the PIP payments it had paid Fernandez, pursuant to *N.J.S.A.* 39:6A–9.1. In September 2005, Nationwide obtained an award against Proformance for its PIP outlay, but the money was not transferred due to Fernandez's pending arbitration proceeding. In that proceeding, the arbitrator awarded Fernandez $1,841,269.62, made up of $1,500,000 in noneconomic damages and $341,269.62 in medical expenses. The medical expense figure reflected the cost of all of Fernandez's medical bills minus Nationwide's PIP payments, thus obviating any issue of double recovery. Fernandez settled with Garafalo and Go Pro for the full amount of the Proformance policy, which was $800,000 less than his adjudicated damages. Because of the award in favor of Nationwide, Proformance, with the consent of Fernandez, deposited the amount that Nationwide had been awarded into court.

Fernandez thereafter instituted an action for a declaratory judgment regarding his entitlement to the deposited funds. Both he and Nationwide filed motions for summary judgment. The trial judge denied Nationwide's motion, granted Fernandez's cross-motion, and directed that the deposited funds be paid to Fernandez. Nationwide appealed and the Appellate Division reversed, relying on the decisions in *Knox v. Lincoln General Insurance Co.*, 304 *N.J.Super.* 431, 701 *A.*2d 445 (App.Div.1997), and *David v. Government Employees Insurance Co.*, 360 *N.J.Super.* 127, 821 *A.*2d 564 (App.Div.), *certif. denied,* 178 *N.J.* 251, 837 *A.*2d 1094 (2003). The panel declared "that where a PIP carrier has paid benefits to its insured, it is entitled to reimbursement of those benefits from the insurance proceeds of a third-party tortfeasor, pursuant to *N.J.S.A.* 39:6A–9.1, even if the limits of the tortfeasor's insurance policy are insufficient to make the insured whole." *Fernandez v. Nationwide Mut. Fire Ins. Co.,* 402

N.J.Super. 166, 168–69, 952 A.2d 1156 (App.Div.2008). We granted certification. 197 N.J. 15, 960 A.2d 745 (2008).

## II.

*N.J.S.A.* 39:6A–9.1 provides that:

> An insurer, health maintenance organization or governmental agency paying ... personal injury protection benefits in accordance with [*N.J.S.A.*] 39:6A–4 or 39:6A–10 ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with section 18 of P.L. 1985, c. 520 (C. 17:28–1.4), or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident.

The statute continues:

> In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
>
> [*N.J.S.A.* 39:6A–9.1.]

We have previously considered that statute and described it as permitting an insurer to recover PIP benefits

> from any tortfeasor who 1) was not required by law to maintain PIP coverage or 2) although required, failed to carry PIP coverage. *N.J.S.A.* 39:6A–9.1. The first class refers to insured commercial or public vehicles without PIP coverage. (A key limitation of the No–Fault Law is its applicability only to private-passenger automobiles.) The second class refers to uninsured tortfeasors. The statute further provides that if the tortfeasor is insured, his or her insurer is liable for the PIP-reimbursement payment. Therefore, recovery from an uninsured tortfeasor may be direct, but recovery from an insured tortfeasor must be through his or her insurer.
>
> [*Unsatisfied Claim & Judgment Fund Bd. v. N.J. Mfrs. Ins. Co.,* 138 N.J. 185, 193, 649 A.2d 1243 (1994) (citations omitted).]

Although the right to reimbursement as between the PIP carrier and the tortfeasor's liability carrier is clear, the Act is silent on the question of priority where the insurer's interest conflicts with that of the insured. Nationwide argues that the

insurer's right to reimbursement is absolute and primary. Fernandez counters that the insurer is entitled to reimbursement from whatever is left of the tortfeasor's policy proceeds, if anything, after the insured is made whole.[1] Because the language is ambiguous and can support each of those interpretations, "recognized principles of statutory construction allow resort to extrinsic tools to determine the Legislature's likely intent." *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 *N.J.* 110, 120, 927 *A.*2d 113 (2007).

### III.

Turning to the legislative history of the statute, in 1972, the New Jersey Automobile Reparation Reform Act ("No Fault Act"), *N.J.S.A.* 39:6A–1 to –35, was passed to address four major concerns: reparation, cost, availability, and judicial economy. *Gambino v. Royal Globe Ins. Cos.*, 86 *N.J.* 100, 105–06, 429 *A.*2d 1039 (1981) (quoting the Automobile Insurance Study Commission, *Reparation Reform for New Jersey Motorists* at 7 (December 1971) (hereinafter *Commission Report*)). In *Gambino*, we considered the reparation objective at length:

> The reparation objective was viewed as the "primary purpose of an automobile insurance system" and was given "priority" by the Commission in formulating the proposals which served as the basis for the PIP statute, *N.J.S.A.* 39:6A–1 *et seq. Commission Report, supra*, at 41. In short, the goal of the legislation in this regard is "[t]o maximize the flow of individual losses into payable claims . . . ," *id.* at 24, and "to provide an equitable and uniform schedule of benefits for all victims." *Id.* at 50. The failure of many automobile accident victims to receive any, or adequate, reimbursement for their injuries was considered a major deficiency in the tort liability system that existed prior to the institution of the no-fault law and an unwarranted hardship upon unfortunate victims. *Id.* at 9–11. *See also Public Hearings before Commission to Study Certain Automobile Insurance Matters*, Vol. 1 at 53, 71, 13A, 30A, 46A (March 30, 1971), Vol. 2 at 3, 121 (April 14, 1971), Vol. 3 at 222 (April 21, 1971) (hereinafter *Public Hearings*). It was believed that once the law became effective, this problem would be alleviated and "victims of accidents involved in private passenger cars will be assured of obtaining prompt

---

[1] One other suggested interpretation is that there is no priority and that the first party to recover against the tortfeasor's policy will carry the day. I have no doubt that such a scheme, pitting the insured against the insurer in a race to the courthouse, was not within the Legislature's contemplation.

compensation for all their economic losses...." *Press Release from the Office of the Governor,* June 20, 1972. The courts have repeatedly recognized the importance of interpreting the Act so as to realize this goal, finding force in the statutory mandate that the Act be liberally construed so as to effectuate its purposes. *N.J.S.A.* 39:6A–16. *Amiano v. Ohio Casualty Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981) ("PIP coverage should be given the broadest application consistent with the statutory language")[.]

[*Id.* at 106, 429 *A.*2d 1039.]

Obviously, the importance of the reparation objective cannot be overstated.

To be sure, with the passage of time, that legislative scheme has undergone numerous transformations in furtherance of cost-containment goals. *See* Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law* § 4:3–3 to –8, at 73–82 (2009). Included, among others, are capped payments, *N.J.S.A.* 39:6A–4b; lower cost options with concomitant reductions in coverage, *N.J.S.A.* 39:6A–4.3; exclusions from PIP benefits, *N.J.S.A.* 39:6A–7; and preclusion of particular damage claims, *N.J.S.A.* 39:6A–8(a).

Nevertheless, although the details of the no-fault system have changed over time, with concerns about costs narrowing the margins of what is recoverable, the reparation objective remains in place. In other words, to the extent that the Legislature has recognized particular damages to be recoverable, it likewise intends that they, in fact, will be recovered wherever possible.

## IV.

With the reparation objective as a backdrop and no contrary suggestion in the Act itself, I cannot subscribe to an interpretation of *N.J.S.A.* 39:6A–9.1 that leaves a victim's losses uncovered in favor of reimbursement to his PIP carrier. Because Fernandez's total damages exceeded the tortfeasor's policy, the proceeds of that policy were, in reality, his. By allowing Nationwide to obtain reimbursement from the policy, it was Fernandez who was paying Nationwide back. That is not what the drafters envisioned when they enacted a law, the purpose of which is "reparation." Al-

though the recoverable benefits have been legislatively circumscribed for cost-containment purposes, there is simply no signal in the legislation or otherwise that the Legislature intended the victim's allowable recovery to be diluted by reimbursement to its insurer.[2]

Moreover, I note that a premium was paid for the PIP coverage that Fernandez received. That premium was the quid pro quo for the prompt satisfaction of his medical bills. If Nationwide is entitled to reimbursement out of what should be Fernandez's recovery, the premium was paid for the satisfaction of medical bills that was not provided.

I recognize that the panels in *Knox* and *David* reached a different conclusion, insofar as they determined that the possibility that the injured party would not be made whole "is a fair trade-off" for PIP benefits to be paid up-front prior to a determination of fault. *David, supra,* 360 *N.J.Super.* at 143–44, 821 *A.2d* 564 (emphasis omitted) (quoting *Knox, supra,* 304 *N.J.Super.* at 437, 701 *A.2d* 445). I disagree. Under that scheme, the insurer essentially provides the insured with a loan that is ultimately paid back out of the insured's pocket. In other words, the insurer meets the prompt prong of "prompt payment," but not the payment prong. For me, promptness, standing alone, is not a justification for extracting later reimbursement out of the insured's

---

[2] Indeed, there is presently pending in the Legislature a bill to amend *N.J.S.A.* 39:6A–9.1 to include the following:

> Any recovery by an insurer, health maintenance organization or governmental agency pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy.

The statement of the bill's sponsor provides:

> This bill is in response to the decision in *Fernandez v. Nationwide Mutual Fire Ins. Co.,* 402 *N.J.Super.* 166, 952 *A.2d* 1156 (App.Div.2008),.... The amendment made by this bill would reverse that outcome.

[Assemb. 3295, 213th Leg. Sess. (2008); S. 2277, 213th Leg. Sess. (2008).]

funds. To the extent that *Knox* and *David* suggest otherwise, I would disapprove them.

To be sure, if the damages sustained by Fernandez had been less than the million-dollar policy of the tortfeasor, Nationwide would have been entitled to PIP reimbursement out of the remaining proceeds. In those circumstances, as between Nationwide and Proformance, the Legislature plainly intended the latter to be responsible to the former. *State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch.*, 146 *N.J.* 1, 14, 679 *A.*2d 620 (1996) (holding reimbursement statute ensures that PIP costs " 'will be borne by ... the individuals responsible for the injury who, in good conscience, ought to pay them' " (quoting *Aetna Ins. Co. v. Gilchrist Bros., Inc.*, 85 *N.J.* 550, 568 n. 2, 428 *A.*2d 1254 (1981) (Sullivan, J., dissenting))).

But that is a far cry from the suggestion that the Legislature also intended the insurer to be reimbursed out of its insured's pocket, which is essentially what has happened here. Because I do not believe that that untoward result was intended by the Legislature, I would reverse the judgment of the Appellate Division and reinstate the summary judgment in favor of Fernandez.

Chief Justice RABNER and Justice ALBIN join in this opinion.

*For affirmance*—Justices LaVECCHIA, WALLACE and RIVERA–SOTO—3.

*For reversal*—Chief Justice RABNER and Justices LONG and ALBIN—3.