*398 Justice ALBIN,
dissenting.
Plaintiff Karon Johnson suffered catastrophic injuries in an automobile accident that rendered him a paraplegic. GEICO paid $250,000 in personal injury protection (PIP) benefits toward plaintiffs medical expenses because he was covered by his mother’s automobile insurance policy. After the accident, the Legislature amended N.J.S.A. 39:6A-9.1 to ensure that an insurance carrier is not reimbursed PIP payments from a settlement or damages award that has not made the insured whole. The majority’s tortured interpretation of the effective date of the amendment to N.J.S.A. 39:6A-9.1 allows GEICO reimbursement of its PIP payments from plaintiffs settlement with the tortfeasors — even though doing so will reduce the available financial resources to pay plaintiffs medical expenses and other future needs. By extending the reach of the old statute, the majority perpetuates the very injustice the amended statute was intended to eliminate. I therefore respectfully dissent.
I.
A.
In 2011, plaintiff filed a dram shop lawsuit against the captioned defendants, including a liquor store for allegedly selling him alcohol before the accident.[5] At the time, plaintiff had not reached the statutory age to purchase alcohol. Defendants settled the lawsuit with plaintiff, agreeing to pay the $1,000,000 limit of their insurance policies. The settlement award was allocated in the following manner: $483,970.10 was placed in a special-needs trust for plaintiff; $251,449.90 was paid to plaintiffs attorneys; and $264,580 was deposited with the court pending the outcome of GEICO’s claim for reimbursement of PIP benefits paid to plaintiff.
*399 Despite having received premium payments for the PIP policy on the covered vehicle,[6] GEICO sought reimbursement of PIP benefits paid to plaintiff to make itself whole at the expense of its insured. Plaintiff suffered permanent injuries in the accident and will incur expenses far in excess of the settlement monies over his lifetime. In short, GEICO wanted to deduct from plaintiffs settlement $264,580 — representing $250,000 of PIP benefits plus interest — funds necessary for plaintiffs medical expenses and long-term care.
In 2011, the Legislature amended N.J.S.A. 39:6A-9.1 to reverse the consequences of the decision in Fernandez v. Nationwide Mutual Fire Insurance (Fernandez I), 402 N.J.Super. 166, 952 A.2d 1156 (App.Div.2008), aff'd by an equally divided court, 199 N.J. 591, 974 A.2d 1031 (2009) (per curiam). Sponsor’s Statement to S. No. 191 (2010); S. Commerce Comm., Statement to S. No. 191 (2010); Assemb. Fin. Inst. & Ins. Comm., Statement to S. No. 191 (2010). Fernandez I, supra, which was affirmed due to a three-three split on the Supreme Court, held that “[a] PIP carrier who has paid PIP benefits to an insured is entitled to reimbursement of those benefits from the insurance proceeds of the third-party tortfeasor, pursuant to N.J.S.A. 39:6A-9.1, even when the amount of the tortfeasor’s insurance is insufficient to make the insured whole.” 402 N.J.Super. at 176, 952 A.2d 1156.[7]
Justice Long, in a dissent joined by two members of the Court, stated that “the Legislature intended the carrier to be reimbursed for its PIP payments only to the extent that the proceeds of the tortfeasor’s policy exceed the full amount of the insured’s damages for all claims.” Fernandez v. Nationwide Mut. Fire Ins. (Fernandez II), 199 N.J. 591, 594, 974 A.2d 1031 (2009) (Long, J., *400 dissenting). By passing the 2011 amendment, the Legislature effectively adopted Justice Long’s interpretation of N.J.S.A. 39:6A-9.1. The purpose of the amendment was to prevent a repetition of Fernandes I—to make certain that the PIP carrier does not receive priority over its insured when the insured is not made whole by a settlement or a damages award. See Sponsor’s Statement to S. No. 191 (2010) (stating that purpose of amendment was to “reverse” outcome of Fernandes I, which held that under pre-amended statute “the claim of an insurer which has paid PIP benefits has priority over the claim of that insurer’s insured who seeks recovery from the tortfeasor’s liability insurance for unpaid medical expenses, pain, suffering, or other damages caused by the accident”); S. Commerce Comm., Statement to S. No. 191 (2010) (same); Assemb. Fin. Inst. & Ins. Comm., Statement to S. No. 191 (2010) (same).
The amended version of N.J.S.A. 39:6A-9.1(b) provides that “[a]ny recovery by an insurer ... pursuant to this subsection shall be subject to any claim against the insured tortfeasor’s insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor’s motor vehicle or other liability insurance policy.” The Legislature instructed that the amendment “shall take effect immediately.” L. 2011, c. 11. The Legislature thus made clear that, after the effective date of the amendment, a PIP carrier should not be reimbursed at the expense of its insured.
The amended statute, if applied prospectively in the circumstances of this case, leads to but one reasonable conclusion — that the Legislature did not intend plaintiffs financial recovery to be sacrificed so that GEICO could be reimbursed PIP benefits paid to plaintiff. A review of the timeline of events demonstrates this point. On August 20, 2010, GEICO paid PIP benefits in the amount of $250,000 to plaintiff. As of that date, GEICO had a right to reimbursement from the tortfeasor’s insurance company under N.J.S.A. 39:6A-9.1. On January 28, 2011, the amendment to N.J.S.A. 39:6A-9.1 went into effect, ensuring that a PIP carrier *401 could not secure reimbursement from the tortfeasor’s insurance company if doing so would leave the PIP carrier’s insured with unpaid medical expenses or other unpaid damages. On June 10, 2011, plaintiff sued defendant tortfeasors, including the liquor store that sold him alcohol. Almost a year after the amendment went into effect, GEICO cross-claimed against the liquor store and the liquor store’s insurers for reimbursement.
The amended statute went into effect before GEICO submitted its reimbursement claim. Under the newly enacted statute, GEI-CO had no vested right to a PIP reimbursement from an injured insured not made whole by his tortfeasors. See Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass’n, 215 N.J. 522, 547, 74 A.3d 860 (2013) (PLIGA). GEICO, an insurance company in a highly regulated industry, had “no ‘contractual expectation’ that a naturally fluid regulatory scheme, ‘subject to change at any time,’ [would] remain in an unalterably fixed state.” Ibid, (citing State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 64-65, 590 A.2d 191 (1991)).
That point was made clear in State Farm. There, the Legislature passed a law establishing the Joint Underwriting Association (JUA) for the purpose of underwriting insurance policies issued to high-risk drivers. State Farm, supra, 124 N.J. at 40-41, 590 A.2d 191. The Legislature explicitly stated that carriers were not responsible for the liabilities incurred by the JUA. Id. at 41, 590 A.2d 191. When the JUA became heavily indebted, the Legislature recognized that the regulatory scheme was not functioning as intended. Id. at 42-43, 590 A.2d 191. The Legislature enacted a new law taxing insurers to pay off the JUA’s debt. Id. at 43-44, 590 A.2d 191. We rejected the insurers’ claims that the Legislature was not authorized to impose a tax on carriers for matters that had accrued under the earlier scheme. See id. at 64-65, 590 A.2d 191. We explained that “[t]he JUA was simply a regulatory scheme for the insurance of high-risk drivers; like all regulatory schemes, it was potentially transient, subject to change at any time by the Legislature that had created it.” Id. at 64, 590 A.2d *402 191. We noted that “[i]n a highly regulated business such as insurance, participants cannot credibly assert that they [have] any vested right or contractual expectation in the indefinite continuance” of a particular regulatory scheme. Id. at 64-65, 590 A.2d 191.
Under the principles set forth in PLIGA and State Farm, GEICO understood that the Legislature was authorized to put in place a new scheme, regardless of the accrual date of plaintiffs claim.
B.
The manifest objective of the amended statute, based on the statute’s language, effective date, and legislative history, was to immediately implement the new law to avoid the shortchanging of another injured insured. Yet, the majority has produced a judicial framework — at odds with the legislative one — that delays the effective date of the statute, rendering plaintiffs rights under the amended statute a nullity. The majority’s mistaken interpretation has real-life consequences for plaintiff, who is now denied the necessary financial resources to address his permanent injuries.
The issue is not about whether the amended statute should be retroactively applied; it should not. Rather, the issue is when the prospective application of that statute commences. The majority posits that GEICO’s right to reimbursement accrued when it paid plaintiff PIP benefits, six months before the amended statute went to effect. Although the majority is correct about the accrual date, the amended statute subjected GEICO’s right to reimbursement to the insured being made whole. As mentioned earlier, the amended statute went into effect before GEICO made a reimbursement claim. The accrual date did not give GEICO a vested right to a PIP reimbursement claim against its insured after passage of the amended statute.
Nothing in the amended statute suggests that the Legislature intended that, after the law’s effective date, a PIP carrier would be able to file a reimbursement claim that would strip an insured *403 of PIP benefits already paid to defray medical expenses. The Legislature could not have intended for another paraplegic or seriously injured insured to suffer under the pre-amendment statute while the PIP carrier was made whole. Indeed, the PIP carrier here, GEICO, has received a windfall because plaintiffs mother dutifully paid premiums for the very benefits that the majority has withdrawn from her son.
In the end, the majority has failed to give the amended statute the true prospective effect intended by the Legislature and therefore allows one further injustice under the old statute.
II.
For the reasons expressed, I respectfully dissent.

 Defendants included a number of individuals and entities: Roselle EZ Quick, LLC, L & J Liquor & Deli, Harshira Patel, Suresh Patel, Gregory Parisi, and Intrepid Investigations.

 Plaintiff was covered under his mother's insurance policy.

 The pre-amendment version of N.J.S.A. 39:6A-9.1 provided that "[a]n insurer ... paying benefits pursuant to ... personal injury protection benefits ... as a result of an accident occurring within this State, shall ... have the right to recover the amount of payments from” certain tortfeasors. See L. 2003, c. 89.