SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## Karon K. Johnson v. Roselle EZ Quick LLC (075044) (A-33-14)

**Argued January 5, 2016 – Decided July 27, 2016**

**CUFF, P.J.A.D. (temporarily assigned), writing for a majority of the Court.**

In this appeal, the Court considers whether a 2011 amendment to N.J.S.A. 39:6A-9.1 (2011 amendment), which allows a personal injury protection (PIP) provider to obtain reimbursement from the tortfeasor's insurer for payments that the PIP provider made to the injured insured only after the insured's claim is satisfied in full, applies retroactively.

On December 16, 2009, plaintiff Karon K. Johnson sustained severe personal injuries after driving his mother's car into a tree while intoxicated, rendering him a paraplegic. Plaintiff filed a claim for PIP benefits with defendant GEICO Insurance Company (GEICO), and GEICO paid the policy limit for PIP coverage of $250,000. On June 19, 2011, plaintiff commenced suit against defendant Roselle EZ Quick LLC, which owned and operated L & J Liquor & Deli, and the non-insurer defendants (collectively, EZ Quick), asserting claims for negligent service of alcoholic beverages to a minor. Plaintiff also sued GEICO, seeking payment of additional PIP benefits. GEICO filed crossclaims against EZ Quick, and a third-party complaint against its insurer (One Beacon), seeking reimbursement for the PIP benefits that it paid to plaintiff. GEICO relied on N.J.S.A. 39:6A-9.1, as it was written prior to the 2011amendment, and the decision in Fernandez v. Nationwide Mutual Fire Insurance Co., 402 N.J. Super. 166 (App. Div. 2008), aff'd by an evenly divided court, 199 N.J. 591 (2009), which addressed insurers' claims for reimbursement under the statute.

On August 9, 2012, EZ Quick settled with plaintiff, and agreed to pay the limit of its policy with One Beacon in the amount of $1,000,000.00. Plaintiff agreed that a portion of the payment would be held by the court (withheld payment) until GEICO's claim for PIP reimbursement was resolved. Plaintiff and GEICO filed cross-motions for summary judgment regarding the withheld payment. GEICO argued that it was entitled to the withheld payment even though this would prevent plaintiff from being fully compensated by EZ Quick on his claim for bodily injury. GEICO relied on N.J.S.A. 39:6A-9.1, prior to the 2011 amendment. Plaintiff asserted that GEICO was precluded from obtaining reimbursement of the PIP benefits that it paid until his claims against EZ Quick were satisfied in full. Plaintiff relied on the 2011 amendment, and argued that although the amendment was enacted on January 28, 2011, and thus after he had filed his claim for PIP benefits, it should be applied retroactively. The trial court disagreed, and concluded that the amendment was not retroactive. The court granted GEICO's motion for summary judgment on the withheld payment, thereby awarding GEICO reimbursement of the $250,000,00 payment for PIP benefits to plaintiff, and accumulated interest.

Plaintiff appealed, and GEICO cross-appealed. A divided panel of the Appellate Division affirmed the trial court's determination. A majority of the panel agreed with the trial court that nothing in the amendment indicated that it should apply retroactively. The panel majority further found no basis for retroactivity under the common law. One member of the panel dissented, and concluded that the amendment should be applied to claims that were unresolved and unpaid before its passage, based on the sponsors' statements explaining the amendment and the panel member's conclusion that the amendment is curative. The dissenting member also concluded that the 2011 amendment applied because the PIP provider's claim did not accrue until the tortfeasor's liability was established in August 2012 when plaintiff and EZ Quick reached a settlement, which was after the date on which the amendment was adopted. Plaintiff filed an appeal as of right. R. 2:2-1(a)(2).

**HELD:** The 2011 amendment to N.J.S.A. 39:6A-9.1 does not expressly or implicitly present any of the factors necessary to rebut the presumption that, as a newly enacted law, it should be applied prospectively. Consequently, the amendment does not apply to plaintiff's claims for personal injuries. The trial court therefore properly granted GEICO's motion for summary judgment on its claim for reimbursement of the PIP benefits that it paid to plaintiff.

1.  Prior to 1972, insurers were free to file suit against other insurers to recover payments for medical expenses based on the common-law right of subrogation.  After the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35 (No-Fault Act), was enacted in 1972, and based on judicial interpretations of an insurer's subrogation rights, it became necessary to clarify and reaffirm an insurer's right to reimbursement through subrogation.  As a result, in 1983, the Legislature enacted N.J.S.A. 39:6A-9.1, which expressly permits an automobile insurer to obtain reimbursement of the PIP benefits that it paid to an insured.  In Fernandez, the Appellate Division recognized that, under the statute, a PIP carrier which has paid PIP benefits is entitled to reimbursement from the insurance coverage of a third-party tortfeasor, even if the tortfeasor's insurance policy would then become insufficient to make the insured injured party whole.  An equally divided Supreme Court recognized this holding as the controlling application of the No-Fault Law for more than a decade, undisturbed by any legislative disapproval.  (pp. 12-17)

2.  The 2011 amendment to N.J.S.A. 39:6A-9.1 was intended to reverse the holding in Fernandez, by providing that an insurer's claim for reimbursement of PIP benefits is subject to the injured party's claim against the tortfeasor, and shall be paid only after satisfaction of that claim.  Whether the 2011 amendment should be applied retroactively, as plaintiff asserts, is a legal question of statutory interpretation.  (pp. 17-18)

3.  As a general rule, newly enacted laws are applied prospectively.  Whether a court should apply a statute retroactively requires the court to determine whether the Legislature intended to give the statute retroactive application.  Legislative intent for retroactivity can be demonstrated by the following:  (i) when the Legislature expresses its intent that the law apply retroactively, either expressly, in the statute or pertinent legislative history, or implicitly, such as where retroactive application may be necessary to make the statute workable or provide the most sensible interpretation; (ii) when an amendment is curative, and thus designed to carry out or explain the intent of the statute; or (iii) when the parties' expectations warrant that interpretation.  (pp. 18-22)

4.  The 2011 amendment does not include any language evidencing that it applies retroactively.  Because the amendment altered the reimbursement scheme established by the pre-amendment statute, and changed settled law, it cannot be applied retroactively without an unequivocal expression of legislative intent, which is absent here.  A legislative intent for retroactive application cannot be inferred from the unofficial statements of individual legislators.  Additionally, the amendment is not curative because it was not designed to carry out or explain the intent of the original statute.  Instead, it was intended to change settled law by providing that PIP insurers cannot receive PIP reimbursement that would prevent the injured party from being made whole.  There is also no basis to conclude that it was the parties' expectation that GEICO would be unable to seek reimbursement until plaintiff was made whole.  Because none of the three factors warranting retroactive application are present in this matter, the Court does not determine whether retroactive application would result in an unconstitutional interference with vested rights, or a manifest injustice.  (pp. 22-30)

5.  Plaintiff's alternative argument that, even if the statute is applied prospectively, he should prevail, does not entitle him to relief.  Pursuant to the express language of the statute and the controlling case law, GEICO's claim accrued when it paid plaintiff's PIP claim on August 20, 2010, and the law in effect at that time is applicable.  The 2011 amendment was adopted later, and therefore does not apply to plaintiff's claim.  (pp. 30-34)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE ALBIN, DISSENTING**, agrees that the 2011 amendment should not be applied retroactively.  However, Justice Albin would conclude that the accrual date of GEICO's claim did not give it a vested right to a PIP reimbursement after passage of the amended statute.  Nothing in the amended statute suggests that the Legislature intended that, after the law's effective date, an insurer should be made whole at the expense of the insured, particularly since this is the result that the amendment was enacted to prevent.

**CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON, join in JUDGE CUFF's opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.  JUSTICE FERNANDEZ-VINA did not participate.**

2

KARON K. JOHNSON,

    Plaintiff-Appellant,

        v.

ROSELLE EZ QUICK LLC, L & J
LIQUOR & DELI, HARSHIRA
PATEL, SURESH PATEL, GREGORY
PARISI, INTREPID
INVESTIGATIONS,

    Defendants,

        and

GEICO INSURANCE COMPANY,

    Defendant-Respondent,

        and

GEICO INSURANCE COMPANY,

    Third-Party Plaintiff,

        v.

ONE BEACON INSURANCE and THE
CAMDEN FIRE INSURANCE
ASSOCIATON,

    Third-Party Defendants.

        Argued January 5, 2016 – Decided July 27, 2016

        On appeal from the Superior Court, Appellate
        Division.

        James C. Mescall argued the cause for
        appellant (Mescall & Acosta, attorneys).

Curtis J. Turpan argued the cause for respondent (Harwood Lloyd, attorneys; Mr. Turpan and Paul E. Kiel, on the brief).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

In this appeal, we consider whether a 2011 amendment to N.J.S.A. 39:6A-9.1 should be applied retroactively. The amendment provides that a personal injury protection (PIP) insurance provider may be reimbursed for payments made to an injured insured party by the tortfeasor's insurer only after the injured party's claim is fully satisfied. The parties entered into a policy agreement, plaintiff drove while intoxicated and was injured in an automobile accident, and plaintiff filed a claim for PIP benefits prior to the enactment of the 2011 amendment.

Plaintiff also filed a civil action alleging negligence by the store that sold him alcohol. When that litigation settled, and pursuant to the pre-amendment law, plaintiff's PIP provider sought priority reimbursement from the tortfeasor's insurer, even though doing so would prevent plaintiff from being fully compensated on the bodily injury claim. Plaintiff contends that this was improper because the legislative intent and purpose of the 2011 amendment, along with the expectations of the parties, justify retroactive application of the amendment to his case.

2

The trial court concluded that the amendment was not retroactive and therefore granted in part the PIP provider's motion for summary judgment.[1]  The Appellate Division affirmed over the dissent of one of its panel members.  The dissenting judge concluded that the amendment was retroactive and, additionally, that the PIP provider's claim did not accrue until the tortfeasor's liability was established, after the 2011 amendment was enacted.

This appeal comes before us as of right, and we now affirm. In so doing, we conclude that plaintiff failed to rebut the presumption that the 2011 amendment to N.J.S.A. 39:6A-9.1, as a newly enacted law, is prospective.  Specifically, the language and legislative history of the amendment provide no indication that the Legislature intended retroactive application.  There is also insufficient evidence that the amendment was merely "curative," because it altered well-settled law and was not enacted in response to a misapplication of that law.  Similarly, given the established law at the time the agreement was entered into and when the injury occurred, we cannot conclude that the expectations of the parties warrant retroactivity.

We are also unpersuaded that PIP providers' reimbursement claims do not accrue until such a claim is filed or the

---

[1] The remaining issues before the trial court are not at issue.

3

tortfeasor's liability is established -- in this case, through settlement. Such a position departs from settled practice that a claim accrues when a party gains the right to institute a suit and the statute of limitations begins to run. In cases such as this, the claim accrues when the insured party files a claim for PIP benefits. Moreover, accepting either of plaintiff's proposals would tie the date of accrual to illogical, unpredictable, or statutorily disfavored events.

I.

On December 16, 2009, plaintiff Karon K. Johnson was twenty years old. On that date, Johnson purchased a bottle of vodka from L & J Liquor & Deli, owned and operated by defendants Roselle EZ Quick, LLC, Harshira Patel, and Suresh Patel (collectively, EZ Quick). Johnson was not asked for identification when making his purchase. Several hours later, after consuming some of the vodka, Johnson was seriously injured when he drove his mother's car into a tree. Johnson's blood alcohol content was determined to have been 0.128% at the time of the crash. Johnson suffered serious injuries rendering him a paraplegic.

Johnson filed a claim for PIP benefits on August 8, 2010, through his mother's auto insurer, defendant GEICO Insurance Company (GEICO). By August 20, 2010, GEICO had paid the full PIP benefits policy limit of $250,000 to Johnson. Over five

4

months later, on January 28, 2011, an amendment to N.J.S.A. 39:6A-9.1 was enacted preventing PIP carriers such as GEICO from being reimbursed from a tortfeasor's insurer for benefits the PIP carrier paid to an insured party until the insured party's claims against the tortfeasor are fully satisfied. L. 2011, c. 11, § 1.

On June 10, 2011, Johnson filed suit in the Law Division against EZ Quick for the negligent service of alcoholic beverages to a minor, and against GEICO for additional no-fault insurance benefits.[2] GEICO filed its answer on December 20, 2011, in which it requested contribution and indemnification from EZ Quick. GEICO also sought PIP reimbursement from EZ Quick, pursuant to N.J.S.A. 39:6A-9.1. On February 22, 2012, GEICO filed a third-party complaint seeking the same relief from EZ Quick's insurer, One Beacon Insurance and/or The Camden Fire Insurance Association (collectively, One Beacon).

On August 9, 2012, Johnson entered into a settlement agreement and release with EZ Quick and One Beacon. Under the agreement, EZ Quick agreed to pay Johnson $1,000,000, the limit of its policy with One Beacon. The $1,000,000 was to be divided

---

[2] Johnson also alleged that defendants Gregory Parisi and Intrepid Investigations tampered with evidence. Those claims were dismissed with prejudice and are not at issue in this appeal. Johnson's claims against GEICO for additional insurance benefits are also not at issue in this appeal.

5

as follows:  $251,449.90 to Johnson's attorneys; $483,970.10 to Johnson's special-needs trust; and $264,580 to the court to be held until GEICO's claim for PIP reimbursement was resolved. The trial court approved the settlement and dismissed with prejudice Johnson's claims against EZ Quick on August 15, 2012.

GEICO and Johnson filed cross-motions for summary judgment regarding the $264,580 held by the court pending resolution of GEICO's reimbursement claim.  In support of its motion, GEICO argued, pursuant to N.J.S.A. 39:6A-9.1, as interpreted by Fernandez v. Nationwide Mutual Fire Insurance Co., 402 N.J. Super. 166 (App. Div. 2008) (Fernandez I), aff'd by an evenly divided court, 199 N.J. 591 (2009) (Fernandez II), that it was entitled to reimbursement from One Beacon, EZ Quick's insurer, even if the limits of EZ Quick's policy would prevent Johnson from being made whole.  The portion of N.J.S.A. 39:6A-9.1 on which GEICO relied states, in part, that

> [a]n insurer . . . paying . . . personal injury protection benefits . . . as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection . . . benefits coverage, other than for pedestrians, . . . or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident.
>
> [N.J.S.A. 39:6A-9.1(a).]

That section was not altered by the 2011 amendment.  L. 2011, c. 11, § 1.

In response, Johnson argued that GEICO was prevented from recovering its payments until his own claim against EZ Quick was fulfilled.  In support, Johnson cited the 2011 amendment to N.J.S.A. 39:6A-9.1, which limits an insurer's right to recover PIP benefit payments from a tortfeasor, by providing that

> [a]ny recovery by an insurer . . . pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy.
>
> [L. 2011, c. 11, § 1 (codified as N.J.S.A. 39:6A-9.1(b)).]

The amendment, which was enacted on January 28, 2011, was to "take effect immediately."  L. 2011, c. 11, § 2.  Although enacted more than a year after he was injured and over five months after he filed a claim for PIP benefits, Johnson contended that the amendment applied retroactively.

In a written decision, the trial court rejected Johnson's argument that the 2011 amendment to N.J.S.A. 39:6A-9.1 should be applied retroactively.  The court found that the amendment's language indicated that it was to take effect "immediately," that the available legislative history did not demonstrate a curative purpose, and that GEICO fairly expected the pre-

7

amendment version of the law to apply. As a result, the trial court entered summary judgment in favor of GEICO. The trial court subsequently entered a final order stating that GEICO was entitled to withdraw $250,000, plus all accumulated interest, from the $264,580 held by the court. The balance was to go to Johnson.

Johnson appealed and GEICO cross-appealed. A divided Appellate Division affirmed in an unpublished opinion. The majority agreed that the language of the 2011 amendment stated that it was to take effect immediately and that the Legislature could have indicated otherwise had it so intended. The majority similarly found no retroactive intent in the legislative history and concluded that the amendment was not curative because it substantially altered the substance and intent of the statute. The majority also found that the parties' expectations did not warrant retroactive application because the pre-amendment law was in effect at the time of the crash and when Johnson claimed the PIP benefits.

Addressing an issue not raised before the trial court, the majority next held that the amendment applies when the injured party submits a PIP claim on or after the effective date of the amendment, January 28, 2011. The court reasoned that a prior decision established that an insurer's right to recover PIP payments arises when an injured party submits a PIP claim. As

such, the majority rejected Johnson's argument that the amendment applied because GEICO's claim only accrued when it filed its third-party complaint -- an event that the court described as an unusual, unreliable, and statutorily unsupported benchmark.

One member of the panel dissented. Addressing retroactivity, the dissenting judge concluded that statements made by the amendment's sponsors clearly indicated an intent to apply the amendment to claims unresolved and unpaid before its passage and that the amendment was curative because it clarified the legislative intent of the statute. The dissenting judge also stated that retroactive application would not affect any vested rights held by GEICO because GEICO was required to pay the PIP benefits to Johnson regardless of whether it could be reimbursed.

The dissent also maintained that neither Johnson nor GEICO had a right to be compensated until One Beacon's obligation to cover the claim was conceded or established, and that GEICO's right to reimbursement therefore did not exist until August 2012, when Johnson and EZ Quick settled Johnson's claim. As a result, according to the dissent, the trial court was bound to apply the 2011 amendment, which was in force at that time.

Johnson appealed to this Court as of right. R. 2:2-1(a)(2).

II.

A.

Johnson asserts three arguments on appeal.  First, he contends that the 2011 amendment to N.J.S.A. 39:6A-9.1 should be applied retroactively because its legislative history, including statements made by its sponsors, implies such an intent.  Johnson also relies on those statements made by individual sponsors to argue that the amendment was curative because it was meant to improve N.J.S.A. 39:6A-9.1 and correct judicial misinterpretation of that statute.  In addition, Johnson maintains that retroactivity would be consistent with the parties' expectations because, at the time of contracting, he expected to receive no-fault benefits from GEICO, and GEICO expected to receive insurance premiums in exchange for that coverage.  Johnson also argues that retroactivity would not cause manifest injustice because GEICO has not quantified the financial impact of applying the amendment retroactively.

Second, Johnson argues that the amendment controls because GEICO did not file its third-party complaint seeking reimbursement from One Beacon until February 22, 2012, and the amendment, if not retroactive, applies to "any legal actions commenced after the effective date" of January 28, 2011.  Alternatively, Johnson adopts the dissent's conclusion that GEICO did not have a right to reimbursement until Johnson's

10

claim against One Beacon was settled on August 9, 2012.

Third, Johnson argues for the first time that the right to the disputed $250,000 is governed by the insurance contract with GEICO, which does not entitle GEICO to reimbursement for PIP benefits owed to insured parties. Johnson therefore submits that permitting such reimbursement would be contrary to the parties' expectations in executing the agreement.

B.

In response, GEICO contends that none of the exceptions for retroactivity apply to the 2011 amendment. GEICO argues that there is no explicit or implicit legislative intent for retroactivity, as reflected by the amendment's immediate effective date, and that the sponsors' oral statements cited by Johnson are not entitled to interpretative weight. GEICO contends that the amendment was not curative because its prioritization of payments to injured parties departs from the statute's original legislative intent and represents a change in settled law, rather than an attempt to merely make the statute more workable or sensible, and because it was enacted in response to a disagreement with a judicial decision.

GEICO also argues that retroactivity would not comport with the parties' expectations because the pre-amendment version of the law was in effect when Johnson filed for PIP benefits, and because the law was well-settled at that point. Similarly,

11

GEICO argues that retroactive application would result in manifest injustice by denying GEICO, along with other parties in similar situations, expected PIP reimbursements.

GEICO also urges the Court to affirm the Appellate Division's holding that the amendment, when applied prospectively, is inapplicable in this case because GEICO's claim accrued when Johnson filed for PIP benefits on August 8, 2010.  Like the appellate panel, GEICO notes that the "two-year time period within which a PIP carrier can assert a right to reimbursement under N.J.S.A. 39:6A-9.1 begins to run when a PIP claim is filed[,]" and that, "[g]enerally, a cause of action accrues when the applicable statute of limitation[s] begins to run."

Finally, GEICO requests that the Court reject Johnson's argument regarding the language in the insurance policy because that issue was not raised before the trial or appellate courts and does not involve a matter of public concern.

III.

A.

Before 1972, "insurers were free to file suit against other insurers to recover payments for medical expenses based on the common-law right of subrogation."  State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 146 N.J. 1, 6 (1996).  That approach, however, was considered "an inefficient means of

12

compensation since it required expensive and time-consuming litigation, and . . . would not compensate drivers whose own fault caused their injuries." Ibid. (quoting Garden State Fire & Cas. Co. v. Commercial Union Ins. Co., 176 N.J. Super. 301, 305 (App. Div. 1980)).

As a result, in 1972, the Legislature enacted the New Jersey Automobile Reparation Reform Act,[3] N.J.S.A. 39:6A-1 to -35 (the No-Fault Act), to "eliminate this type of litigation" by requiring automobile insurers to provide "primary coverage" and "pay the medical expenses of [their] insured[,]" State Farm, supra, 146 N.J. at 6 (quoting Garden State Fire, supra, 176 N.J. Super. at 305). The No-Fault Act also provided a limited subrogation right, in that PIP carriers would be "subrogated to the rights of any party to whom [they] make[] [PIP] payments," but only through "inter-company arbitration or by inter-company agreement" with the tortfeasor's insurer. L. 1972, c. 70, § 9. That provision would also become "inoperative" two years from its effective date. Ibid.

Nine years after its passage, the Court concluded that, following the expiration of the No-Fault Act subrogation provision, "an insurer's right to 'subrogation,' if any, would

---

[3] In 1998, the No-Fault Act was amended by the Automobile Insurance Cost Reduction Act, commonly known as AICRA. See L. 1998, c. 21, § 1 (codified as N.J.S.A. 39:6A-1.1).

be the same as prior to [the provision's] enactment." Aetna Ins. Co. v. Gilchrist Bros., 85 N.J. 550, 567 (1981). In the same opinion, however, the Court held that another section of the No-Fault Act, which stated that "[e]vidence of the amounts collectible or paid pursuant to [PIP coverage] . . . is inadmissible in a civil action for recovery of damages for bodily injury by such injured person[,]" id. at 562 (quoting N.J.S.A. 39:6A-12), extinguished an injured person's right "to maintain an action for PIP payments[,]" ibid. As a result, because the No-Fault Act "eliminated the ability of the insured in an action in this State to recover damages from the tortfeasor for the amounts collectible or paid under PIP[,]" ibid., insurers had no right to reimbursement through subrogation, id. at 567.

In 1983, the Legislature responded to the Court's decision in Aetna by enacting N.J.S.A. 39:6A-9.1.[4] State Farm, supra, 146 N.J. at 9. The purpose of that amendment was to "alleviate the imbalance" caused by Aetna by "allowing automobile insurers to recover PIP through reimbursement." Ibid. (citations omitted). The insurers' new right of reimbursement was primary to, and independent of, any insured's rights, including the

---

[4] The Legislature also created an exemption in N.J.S.A. 39:6A-12 for the admissibility of evidence of the amount of insurance benefits paid to an injured party for actions brought pursuant to N.J.S.A. 39:6A-9.1. L. 1983, c. 362, § 11.

14

right to subrogation.  Ibid.

That reimbursement right, as enacted, provided for recovery from the tortfeasor's insurer as follows:

> An insurer paying personal injury protection benefits in accordance with [N.J.S.A. 39:6A-4 or 39:6A-10], as a result of an accident occurring within this State shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection coverage, other than for pedestrians.  In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved insurers or, upon failing to agree, by arbitration.
>
> [L. 1983, c. 362, § 20.]

Subsequent amendments broadened the types of parties that could seek reimbursement for benefits paid so that, by 2003, N.J.S.A. 39:6A-9.1 provided that

> [a]n insurer, health maintenance organization or governmental agency paying benefits pursuant to [N.J.S.A. 39:6A-4.3], personal injury protection benefits in accordance with [N.J.S.A. 39:6A-4 or 39:6A-10], medical expense benefits pursuant to [N.J.S.A. 39:6A-3.1] or benefits pursuant to [N.J.S.A. 39:6A-3.3], as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the

15

accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with [N.J.S.A. 17:28-1.4], or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident.

[L. 2003, c. 89, § 53.]

Significantly, N.J.S.A. 39:6A-9.1 continuously provided PIP providers a "right to recover the amount of payments from any tortfeasor" without PIP coverage. L. 2003, c. 89, § 53. The Legislature also did not alter the time when an insurer's right to reimbursement accrued. Ibid.

Thus, the Appellate Division in Fernandez I, supra, addressed a consistent, over twenty-year-old framework for PIP reimbursement when, in 2008, it held that, "where a PIP carrier has paid benefits to its insured, it is entitled to reimbursement of those benefits from the insurance proceeds of a third-party tortfeasor . . . even if the limits of the tortfeasor's insurance policy are insufficient to make the insured whole." 402 N.J. Super. at 168-69. That decision was affirmed the next year by an equally divided Supreme Court. In affirming, three justices stated that the appellate holding "has been the controlling application of the No-Fault Law in this state for more than a decade, undisturbed by any legislative disapproval." Fernandez II, supra, 199 N.J. at 593. Those

16

justices also found no compelling reason "to justify reinterpretation of the No-Fault Law," and stated that the Legislature could "alter the law" if it believed "that a different policy is preferable[.]" Ibid.

Thereafter, the Legislature passed Senate Bill No. 191, an amendment to N.J.S.A. 39:6A-9.1, which was signed into law by the Governor on January 28, 2011. L. 2011, c. 11, § 1. The amendment added the following language to the end of N.J.S.A. 39:6A-9.1, which is now part of subsection (b):

> Any recovery by an insurer, health maintenance organization or governmental agency pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy.
>
> [L. 2011, c. 11, § 1 (emphasis added).]

The Sponsor's Statement, the Senate Commerce Committee Statement, and the Assembly Financial Institutions and Insurance Committee Statement provided that the amendment was "in response to" the Fernandez decisions, and that it "would reverse th[e] outcome" of that case. Sponsor's Statement to Senate No. 191 (2010); Senate Commerce Comm., Statement to Senate No. 191 (2010); Assembly Fin. Insts. & Ins. Comm., Statement to Senate No. 191 (2010). The amendment provided that it would "take effect immediately." L. 2011, c. 11, § 2.

17

The central question presented here is whether the 2011 amendment to N.J.S.A. 39:6A-9.1 was intended to apply retroactively. The trial and appellate courts answered that question in the negative on a motion for summary judgment. We review an order granting summary judgment "in accordance with the same standards as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). Such a motion will be granted if the record demonstrates that there is no genuine issue of material fact and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Whether the 2011 amendment should be applied retroactively is a purely legal question of statutory interpretation. See McGovern v. Rutgers, 211 N.J. 94, 108 (2012). We review questions of law de novo, and do not defer to the conclusions of the trial or appellate courts. Ibid.

C.

When interpreting a statute, "our overriding goal must be to determine the Legislature's intent." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 586 (2013) (quoting Cast Art Indus., LLC v. KPMG LLP, 209 N.J. 208, 221 (2012)). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." Cashin v. Bello, 223 N.J. 328, 335 (2015) (quoting State v. Gandhi, 201 N.J. 161, 176

(2010)).  "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  It is only when there is ambiguity in the language that we turn to extrinsic evidence, such as legislative history. Id. at 195-96 (citing DiProspero, supra, 183 N.J. at 492-93).

Generally, newly enacted laws are applied prospectively. James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 556 (2014).  This approach is based on "long-held notions of fairness and due process[,]" Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45 (2008), because, "although everyone is presumed to know the law, no one is expected to anticipate a law that has yet to be enacted[,]" Maeker v. Ross, 219 N.J. 565, 578 (2014) (citations omitted).  That practice, however, is no more than a rule of statutory interpretation meant to "aid the court in the search for legislative intent."  Twiss v. State, 124 N.J. 461, 467 (1991) (citation omitted).  As such, it "is not to be applied mechanistically to every case."  Gibbons v. Gibbons, 86 N.J. 515, 522 (1981) (citing Rothman v. Rothman, 65 N.J. 219, 224 (1974))).

Rather, "[t]wo questions inhere in the determination whether a court should apply a statute retroactively."  Twiss, supra, 124 N.J. at 467.  "The first question is whether the

19

Legislature intended to give the statute retroactive application." Ibid. (citing Gibbons, supra, 86 N.J. at 522). "If so, the second question is whether retroactive application is an unconstitutional interference with 'vested rights' or will result in a 'manifest injustice.'" Ibid. (quoting State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 498-99 (1983)). Both questions must be satisfied for a statute to be applied retroactively.

In addressing the first question, legislative intent for retroactivity can be demonstrated: "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." James, supra, 216 N.J. at 563. "Only if one of these grounds is present, will we give a statute retroactive effect." Cruz, supra, 195 N.J. at 46.

The Legislature's expression of intent to apply a statute retroactively "may be either express, that is, stated in the language of the statute or in the pertinent legislative history, or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation[.]" Gibbons, supra, 86 N.J. at 522. When the Legislature is silent on the issue, a prospective intent "may be inferred from [the] knowledge that courts generally will enforce

newly enacted substantive statutes prospectively, unless [the Legislature] clearly expresses a contrary intent." Maeker, supra, 219 N.J. at 578. Moreover, "a statute [that] changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of contrary legislative intent." Phillips v. Curiale, 128 N.J. 608, 617 (1992) (alteration in original) (quoting Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990)).

A statute is curative "if it is designed merely to carry out or explain the intent of the original statute[,]" in that its purpose is "to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act." Nelson v. Bd. of Educ., 148 N.J. 358, 370 (1997) (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 288 (App. Div. 1987)). A curative statute may clarify, but may not change, the meaning of existing law. Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386-87 (App. Div. 1992) (citing Carnegie Bank v. Shalleck, 256 N.J. Super. 23, 29-40 (App. Div. 1992)), aff'd, 131 N.J. 400 (1993). The same restrictions apply when the Legislature seeks to remedy what it "perceive[s] as a misapplication of the law" by the courts. 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 605 (1999).

Finally, "in the absence of a clear expression of

21

legislative intent that the statute is to be applied prospectively, such considerations as the expectations of the parties may warrant retroactive application of a statute." Gibbons, supra, 86 N.J. at 523. In such circumstances, a court will look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law. James, supra, 216 N.J. at 573. An expectation of retroactive application "should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application." Ibid. For example, a party may not rely on pending legislation because "[t]he possibility that a bill might become law is an expectation built on uncertainty until it happens." Ibid.

IV.

Johnson concedes that the Legislature did not explicitly provide that the 2011 amendment would be applied retroactively. Rather, the amendment directs that it is to "take effect immediately." L. 2011, c. 11, § 2. Such language "bespeak[s] an intent contrary to, and not supportive of, retroactive application." Cruz, supra, 195 N.J. at 48 (citation omitted). Indeed, we have understood it to mean that newly enacted provisions "will apply to claims that arise immediately after the effective date of the amendment to the Act." Id. at 49.

Like the 2011 amendment before us now, the amendment

22

considered in James, supra, stated that it was "to take effect immediately." 216 N.J. at 568. The amendment considered in James prohibited inclusion of step-down provisions to provide less uninsured and underinsured coverage for employees in motor vehicle liability policies issued to corporate or business entities. Id. at 555-56. There, the plaintiff had been injured while driving his employer's vehicle two months before the amendment barring step-down clauses was enacted. Id. at 558-59. The motor vehicle liability policy issued to the plaintiff's employer containing a step-down provision for employees was issued five months before the amendment was enacted. Id. at 559. In determining whether the amendment was nonetheless meant to be applied retroactively, the Court noted that, "had the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective." Id. at 568 (citation omitted). In that case, however, "[n]either the law nor the bill sponsor's statement expresse[d] that the law was to have operative effect before its stated effective date." Ibid. (citation omitted). As a result, "the plain language of the statute simply [did] not specify an intended retroactive effect[.]" Ibid.

As in James, the 2011 amendment to N.J.S.A. 39:6A-9.1 was meant to "take effect immediately" and includes no language

23

indicating a retroactive intent.  Had the Legislature sought to apply the amendment to all pending claims, it could have adopted the approach taken in other amendments, such as applying it to "all actions and proceedings that accrue, are pending or are filed" at the time of enactment.  See Phillips, supra, 128 N.J. at 611 (quoting L. 1987, c. 217, § 6).  That it did not do so indicates a lack of intent to depart from the standard practice of prospective application.  Maeker, supra, 219 N.J. at 578.

Nonetheless, Johnson argues that a retroactive intent may be inferred from statements made by the amendment's sponsors. Those statements, however, are not official sponsor statements affixed to a bill.  See Panzino v. Cont'l Can Co., 71 N.J. 298, 301-02 (1976); Deaney v. Linen Thread Co., 19 N.J. 578, 584-85 (1955).  Instead, they are unofficial statements of individual legislators, which "are not generally considered to be a reliable guide to legislative intent[,]" Berg v. Christie, ___ N.J. ___, ___ (2016) (slip op. at 40) (quoting State v. Yothers, 282 N.J. Super. 86, 104 (App. Div. 1995) (Skillman, J.A.D., dissenting)), because they "tell us only what the speaker . . . believed" and "nothing about what the Legislature meant by the words it chose to include in the amendment[,]" Cruz, supra, 195 N.J. at 48.  The sponsors' statements, like the text of the amendment, only indicate that the amendment was to take effect immediately, which, as noted, belies any claimed retroactive

24

intent.

We also do not find that retroactive application is "necessary to make the statute workable or to give it the most sensible interpretation[.]" Gibbons, supra, 86 N.J. at 522. Johnson has offered no evidence to support such a finding, and it appears that the pre-amendment law, although perceived by some as unjust, was entirely workable, particularly in ensuring that PIP carriers could seek reimbursement from tortfeasors.

Moreover, because the amendment altered the reimbursement scheme established by the pre-amendment statute, the amendment changed settled law. Between October 4, 1983 and January 28, 2011, PIP carriers had a primary right to reimbursement, unconnected to the claims of the insured. The 2011 amendment reversed that statutory order, making a PIP carrier's reimbursement contingent on full satisfaction of the insured's claims. An amendment altering settled law cannot be applied retroactively without an "unequivocal expression of . . . legislative intent[,]" Phillips, supra, 128 N.J. at 617 (quoting Dewey, supra, 121 N.J. at 95), of which there is none here. Further, our concern in Cruz, supra, 195 N.J. at 49, that retroactive application could reach "beyond pending and non-finalized claims[,]" thereby "rais[ing] the specter that all of the awards that have been entered in years past would be reopened[,]" is not dissipated by the fact that this amendment

25

may affect only a small number of cases.

For similar reasons, we conclude that the 2011 amendment was not curative, because it was not "designed merely to carry out or explain the intent of the original statute[,]" Nelson, supra, 148 N.J. at 370, or "to remedy a perceived imperfection in or misapplication of [the] statute[,]" ibid. (quoting Kendall, supra, 219 N.J. Super. at 288). To the contrary, the purpose of the amendment was to alter settled law by providing that PIP insurers cannot receive reimbursements that would prevent the injured party from being made whole. The amendment therefore not only changed the reimbursement process, but also altered the purpose of N.J.S.A. 39:6A-9.1, which had ensured that PIP providers had a right to reimbursement for paid claims. A statutory change based on public policy considerations cannot be curative. James, supra, 216 N.J. at 573; see also Olkusz v. Brown, 401 N.J. Super. 496, 503-04 (App. Div. 2008) (stating that amendment expressing, "for the first time, the public policy position of the Legislature" is not curative).

In addition, unlike in 2nd Roc-Jersey Associates, supra, 158 N.J. at 605, in which an official sponsor statement explicitly provided that the amendment was meant to clarify existing law, there is no indication in the legislative history of the 2011 amendment that it was enacted to address a perceived misapplication of the law. See also Cty. of Monmouth v.

26

Commc'ns Workers of Am., 300 N.J. Super. 272, 292 (App. Div. 1997) (finding statute curative where committee statement provided that the amendatory act was meant to clarify existing law). Similarly, in contrast to Twiss, supra, 124 N.J. at 468, the amendment does not apply to a period of time preceding its enactment, "as if [the act] had been in effect during that period[,]" (emphasis omitted) (quoting N.J.S.A. 46:30B-5), and retroactive application therefore would not reflect "the Legislature's attempt to improve the existing statutory scheme" or be "necessary to achieve its remedial purposes," ibid. To the contrary, Johnson's arguments rely on informal sponsor comments, which, as noted, do not warrant interpretative weight. Moreover, those statements do not evince a curative intent.

For example, although Johnson argues that the Assembly Sponsor characterized the outcome in Fernandez II as "not what the Legislature intended[,]" the Sponsor was actually describing the view of the three justices who did not vote to affirm the appellate decision in that case. Public Hearing Before Assembly Fin. Insts. & Ins. Comm. at 4 (Dec. 9, 2010). Indeed, the Sponsor later described the amendment as a "new policy[,]" id. at 16, remedying "a quirk in the law that the Supreme Court has recognized should be addressed[,]" id. at 7. The Senate Sponsor's statements -- that there was "a judicially determined ranking of plaintiffs" and that the amendment would "rerank[]

27

the primacy in which we allow claims" -- also do not establish that the Legislature viewed the Fernandez decisions as misinterpreting the law, or that it intended the amendment to be curative. Public Hearing Before Senate Commerce Comm. at 19 (Oct. 7, 2010).

The language used in the official sponsor and committee statements, providing that the amendment was "in response" to, and meant to "reverse," the Fernandez decisions, also cannot support retroactivity. Although the sponsor and committee statements constitute legislative history, see State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 373 (App. Div. 2011), we have found that such language does not suggest a curative purpose or retroactive intent, see James, supra, 216 N.J. at 562, 574 (finding amendment "not curative" despite official sponsor statement that it was "in response to" and would "reverse[] the effect" of specific court decision); see also Serrano v. Gibson, 304 N.J. Super. 314, 319 (App. Div. 1997) (stating that "reverse" is "not [a] curative or ameliorative term"). There is no justification for a different conclusion in this case.

We also decline to find that the parties expected that GEICO would be unable to seek reimbursement until Johnson was made whole. In this case, the pre-amendment law was in effect when the parties entered into the insurance contract, when

28

Johnson was injured, and when Johnson sought PIP benefits. Both Fernandez decisions had also been issued by the time Johnson was injured. Moreover, those decisions were rooted in earlier case law establishing that carriers paying PIP benefits "have a right to be made whole even though reimbursement may reduce the pool of available insurance coverage to which the claimant . . . may look for recovery." Knox v. Lincoln Gen. Ins. Co., 304 N.J. Super. 431, 437 (App. Div. 1997); see also David v. Gov't Emps. Ins. Co., 360 N.J. Super. 127, 140-41, 144 (App. Div.) (reaffirming Knox and finding no conflict with IFA Insurance Co. v. Waitt, 270 N.J. Super. 621 (App. Div.), certif. denied, 136 N.J. 295 (1994)), certif. denied, 178 N.J. 251 (2003).

As such, it would be reasonable for an insurer such as GEICO to rely on the well-settled statutory and case law establishing PIP carriers' primacy in seeking reimbursements when it issued the PIP policy and formed its expectations regarding reimbursement. Any contrary expectations held by Johnson or any other driver would have been completely contrary to established law and cannot support retroactivity.

An amendment will not be applied retroactively unless one of the three above-mentioned factors is present. Cruz, supra, 195 N.J. at 46. Because none of those factors are implicated by the text, legislative history, or purpose of the 2011 amendment, or by the expectations of the parties, we need not determine

29

whether retroactive application would result in unconstitutional interference with "vested rights" or a "manifest injustice." Cf. Nobrega v. Edison Glen Assocs., 167 N.J. 520, 537 (2001).

V.

Johnson next contends that the amendment is applicable even if applied prospectively because GEICO's claim had not been perfected at the time the Legislature amended the statutory reimbursement order on January 28, 2011. Specifically, Johnson argues that GEICO's right to file a claim did not accrue until it filed its third-party complaint against One Beacon on February 22, 2012, or, in the alternative, when EZ Quick's liability was established through settlement between Johnson and One Beacon on August 9, 2012. We are unpersuaded by this argument.

A cause of action will accrue on the date that "'the right to institute and maintain a suit' first arose." White v. Mattera, 175 N.J. 158, 164 (2003) (quoting Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968)). The date of accrual also generally coincides with "the date on which the statutory clock begins to run." Ibid. (quoting Ali v. Rutgers, 166 N.J. 280, 286 (2000)); see also Poetz v. Mix, 7 N.J. 436, 445 (1951) (stating that two-year limitations period would expire two years from accrual of plaintiff's claim).

30

An insurer paying PIP benefits to an injured party has a right to recover the amount of its payments "within two years of the filing of the claim[.]"  N.J.S.A. 39:6A-9.1(a).  In other words, the insurer "must commence suit for reimbursement from a tortfeasor within two years of 'the filing of the claim.'"  N.J. Mfrs. Ins. Grp. v. Holger Trucking Corp., 417 N.J. Super. 393, 394 (App. Div. 2011).  "The claim" that triggers the two-year limitations period, based on the language and purpose of the statute, is the injured party's "submission of the PIP claim form[.]"  Id. at 399-400; see also N.J. Auto. Full Ins. Underwriting Ass'n v. Liberty Mut. Ins. Co., 270 N.J. Super. 49, 53 (App. Div. 1994) (stating Legislature intended "to limit the right of insurers to seek reimbursement for PIP payments from the tortfeasor to a period of two years, which period begins to run from the filing of the claim").

Thus, pursuant to the express language of the statute and settled case law, GEICO's claim accrued, and the statute of limitations began to run, when Johnson filed his PIP claim on August 8, 2010.  The Legislature has provided no justification or intent, whether explicit or implicit, for us to reach a different result.  The cases cited by Johnson, therefore, are inapposite.  See, e.g., James, supra, 216 N.J. at 568-69 (finding "language of the new law" clearly showed legislative intent to affect policies in force at enactment); Alan J.

Cornblatt, P.A. v. Barow, 153 N.J. 218, 232, 236 (1998) (finding amendment covering "causes of action which occur on or after the effective date" applicable to conduct, not claims, occurring after enactment).

Further, where the Legislature has failed to "define or specify when a cause of action shall be deemed to have accrued within the meaning of [a] statute," the courts will exercise their "proper judicial function" to determine when the cause of action accrues for that class of cases. Fernandi v. Strully, 35 N.J. 434, 449 (1961) (citations omitted). Making such a decision "is to establish a general rule of law for a class of cases, which . . . must be founded on reason and justice." Ibid. (quoting 1 Wood on Limitations § 122a, at 685-86 (4th ed. 1916)). As described above, tying the accrual of a cause of action to when the right to institute a suit arises is reasonable, fair, and based on long-standing practice.

In contrast, the accrual dates of an insurer's right to PIP reimbursement suggested by Johnson, that is, when GEICO filed its third-party claim or when EZ Quick's liability was established by settlement, represent events which the original and amended versions of N.J.S.A. 39:6A-9.1 eschewed. The accrual dates offered by Johnson are contrary to the explicit language of N.J.S.A. 39:6A-9.1(a), which provides that the right accrues when the injured party files a claim for PIP benefits.

Johnson had filed his claim and received all PIP benefits to which he was entitled by August 20, 2010, months before the effective date of the 2011 amendment. As of that time, GEICO's right to reimbursement had accrued and the amount of reimbursement was known. As in James, supra, "the new law did not retroactively alter . . . claims that arose before the legislation took effect." 216 N.J. at 556. Johnson submits no legal authority to support departure from the express terms of the statute.

## VI.

We decline to address Johnson's argument that this case should be governed by the PIP policy agreement. This issue was not raised before the trial or appellate courts, and we "will consider matters not properly raised below only if the issue is one 'of sufficient public concern.'" Cornblatt, supra, 153 N.J. at 230 (quoting State v. Churchdale Leasing, Inc., 115 N.J. 83, 100 (1989)). The significance of Johnson's argument, however, is limited to the case at hand. Moreover, the record on this issue is incomplete -- the full policy agreement has not been provided to the Court -- making its resolution now all the more inappropriate. Ibid. (citations omitted).

## VII.

In sum, we conclude that the 2011 amendment to N.J.S.A. 39:6A-9.1 does not expressly or implicitly present any of the

33

factors needed to rebut the presumption of prospective application. Because the 2011 amendment altered settled law, we would expect to find an unequivocal statement that it was to be applied retroactively. Moreover, at the time when the policy was issued, when Johnson was injured, and when he filed his PIP claim, both parties expected GEICO to have a primary right to reimbursement.

To be sure, prospective application of the 2011 amendment diminishes Johnson's recovery. Applying the 2011 amendment retroactively, however, would be contrary to established law and would upend the expectations of PIP providers before enactment of the amendment. The same would be true were we to rule in Johnson's favor on the basis that GEICO's claim did not accrue when Johnson filed for PIP benefits. That too would create a rule untethered to settled law.

## VIII.

The judgment of the Appellate Division is affirmed.


CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON, join in JUDGE CUFF's opinion. JUSTICE ALBIN filed a separate, dissenting opinion. JUSTICE FERNANDEZ-VINA did not participate.

34

KARON K. JOHNSON,

    Plaintiff-Appellant,

       v.

ROSELLE EZ QUICK LLC, L & J
LIQUOR & DELI, HARSHIRA
PATEL, SURESH PATEL, GREGORY
PARISI, INTREPID
INVESTIGATIONS,

    Defendants,

       and

GEICO INSURANCE COMPANY,

    Defendant-Respondent,

       and

GEICO INSURANCE COMPANY,

    Third-Party Plaintiff,

       v.

ONE BEACON INSURANCE and THE
CAMDEN FIRE INSURANCE
ASSOCIATON,

       Third-Party Defendants.

    JUSTICE ALBIN, dissenting.

    Plaintiff Karon Johnson suffered catastrophic injuries in an automobile accident that rendered him a paraplegic. GEICO paid $250,000 in personal injury protection (PIP) benefits

toward plaintiff's medical expenses because he was covered by his mother's automobile insurance policy. After the accident, the Legislature amended <u>N.J.S.A.</u> 39:6A-9.1 to ensure that an insurance carrier is not reimbursed PIP payments from a settlement or damages award that has not made the insured whole. The majority's tortured interpretation of the effective date of the amendment to <u>N.J.S.A.</u> 39:6A-9.1 allows GEICO reimbursement of its PIP payments from plaintiff's settlement with the tortfeasors -- even though doing so will reduce the available financial resources to pay plaintiff's medical expenses and other future needs. By extending the reach of the old statute, the majority perpetuates the very injustice the amended statute was intended to eliminate. I therefore respectfully dissent.

### I.

### A.

In 2011, plaintiff filed a dram shop lawsuit against the captioned defendants, including a liquor store for allegedly selling him alcohol before the accident.[5] At the time, plaintiff had not reached the statutory age to purchase alcohol. Defendants settled the lawsuit with plaintiff, agreeing to pay the $1,000,000 limit of their insurance policies. The

---

[1] Defendants included a number of individuals and entities: Roselle EZ Quick, LLC, L & J Liquor & Deli, Harshira Patel, Suresh Patel, Gregory Parisi, and Intrepid Investigations.

2

settlement award was allocated in the following manner: $483,970.10 was placed in a special-needs trust for plaintiff; $251,449.90 was paid to plaintiff's attorneys; and $264,580 was deposited with the court pending the outcome of GEICO's claim for reimbursement of PIP benefits paid to plaintiff.

Despite having received premium payments for the PIP policy on the covered vehicle,[6] GEICO sought reimbursement of PIP benefits paid to plaintiff to make itself whole at the expense of its insured. Plaintiff suffered permanent injuries in the accident and will incur expenses far in excess of the settlement monies over his lifetime. In short, GEICO wanted to deduct from plaintiff's settlement $264,580 -- representing $250,000 of PIP benefits plus interest -- funds necessary for plaintiff's medical expenses and long-term care.

In 2011, the Legislature amended N.J.S.A. 39:6A-9.1 to reverse the consequences of the decision in Fernandez v. Nationwide Mutual Fire Insurance (Fernandez I), 402 N.J. Super. 166 (App. Div. 2008), aff'd by an equally divided court, 199 N.J. 591 (2009) (per curiam). Sponsor's Statement to S. No. 191 (2010); S. Commerce Comm., Statement to S. No. 191 (2010); Assemb. Fin. Inst. & Ins. Comm., Statement to S. No. 191 (2010). Fernandez I, supra, which was affirmed due to a three-three

---

[2] Plaintiff was covered under his mother's insurance policy.

3

split on the Supreme Court, held that "[a] PIP carrier who has paid PIP benefits to an insured is entitled to reimbursement of those benefits from the insurance proceeds of the third-party tortfeasor, pursuant to N.J.S.A. 39:6A-9.1, even when the amount of the tortfeasor's insurance is insufficient to make the insured whole."  402 N.J. Super. at 176.[7]

Justice Long, in a dissent joined by two members of the Court, stated that "the Legislature intended the carrier to be reimbursed for its PIP payments only to the extent that the proceeds of the tortfeasor's policy exceed the full amount of the insured's damages for all claims."  Fernandez v. Nationwide Mut. Fire Ins. (Fernandez II), 199 N.J. 591, 594 (2009) (Long, J., dissenting).  By passing the 2011 amendment, the Legislature effectively adopted Justice Long's interpretation of N.J.S.A. 39:6A-9.1.  The purpose of the amendment was to prevent a repetition of Fernandez I -- to make certain that the PIP carrier does not receive priority over its insured when the insured is not made whole by a settlement or a damages award. See Sponsor's Statement to S. No. 191 (2010) (stating that purpose of amendment was to "reverse" outcome of Fernandez I,

---

[3] The pre-amendment version of  N.J.S.A. 39:6A-9.1 provided that "[a]n insurer . . . paying benefits pursuant to . . . personal injury protection benefits . . . as a result of an accident occurring within this State, shall . . . have the right to recover the amount of payments from" certain tortfeasors.  See L. 2003, c. 89.

4

which held that under pre-amended statute "the claim of an insurer which has paid PIP benefits has priority over the claim of that insurer's insured who seeks recovery from the tortfeasor's liability insurance for unpaid medical expenses, pain, suffering, or other damages caused by the accident"); S. Commerce Comm., Statement to S. No. 191 (2010) (same); Assemb. Fin. Inst. & Ins. Comm., Statement to S. No. 191 (2010) (same).

The amended version of N.J.S.A. 39:6A-9.1(b) provides that "[a]ny recovery by an insurer . . . pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy." The Legislature instructed that the amendment "shall take effect immediately." L. 2011, c. 11. The Legislature thus made clear that, after the effective date of the amendment, a PIP carrier should not be reimbursed at the expense of its insured.

The amended statute, if applied prospectively in the circumstances of this case, leads to but one reasonable conclusion -- that the Legislature did not intend plaintiff's financial recovery to be sacrificed so that GEICO could be reimbursed PIP benefits paid to plaintiff. A review of the timeline of events demonstrates this point. On August 20, 2010, GEICO paid PIP benefits in the amount of $250,000 to plaintiff.

5

As of that date, GEICO had a right to reimbursement from the tortfeasor's insurance company under N.J.S.A. 39:6A-9.1. On January 28, 2011, the amendment to N.J.S.A. 39:6A-9.1 went into effect, ensuring that a PIP carrier could not secure reimbursement from the tortfeasor's insurance company if doing so would leave the PIP carrier's insured with unpaid medical expenses or other unpaid damages. On June 10, 2011, plaintiff sued defendant tortfeasors, including the liquor store that sold him alcohol. Almost a year after the amendment went into effect, GEICO cross-claimed against the liquor store and the liquor store's insurers for reimbursement.

The amended statute went into effect before GEICO submitted its reimbursement claim. Under the newly enacted statute, GEICO had no vested right to a PIP reimbursement from an injured insured not made whole by his tortfeasors. See Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 547 (2013) (PLIGA). GEICO, an insurance company in a highly regulated industry, had "no 'contractual expectation' that a naturally fluid regulatory scheme, 'subject to change at any time,' [would] remain in an unalterably fixed state." Ibid. (citing State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 64-65 (1991)).

That point was made clear in State Farm. There, the Legislature passed a law establishing the Joint Underwriting

6

Association (JUA) for the purpose of underwriting insurance policies issued to high-risk drivers. State Farm, supra, 124 N.J. at 40-41. The Legislature explicitly stated that carriers were not responsible for the liabilities incurred by the JUA. Id. at 41. When the JUA became heavily indebted, the Legislature recognized that the regulatory scheme was not functioning as intended. Id. at 42-43. The Legislature enacted a new law taxing insurers to pay off the JUA's debt. Id. at 43-44. We rejected the insurers' claims that the Legislature was not authorized to impose a tax on carriers for matters that had accrued under the earlier scheme. See id. at 64-65. We explained that "[t]he JUA was simply a regulatory scheme for the insurance of high-risk drivers; like all regulatory schemes, it was potentially transient, subject to change at any time by the Legislature that had created it." Id. at 64. We noted that "[i]n a highly regulated business such as insurance, participants cannot credibly assert that they [have] any vested right or contractual expectation in the indefinite continuance" of a particular regulatory scheme. Id. at 64-65.

Under the principles set forth in PLIGA and State Farm, GEICO understood that the Legislature was authorized to put in place a new scheme, regardless of the accrual date of plaintiff's claim.

B.

7

The manifest objective of the amended statute, based on the statute's language, effective date, and legislative history, was to immediately implement the new law to avoid the shortchanging of another injured insured. Yet, the majority has produced a judicial framework -- at odds with the legislative one -- that delays the effective date of the statute, rendering plaintiff's rights under the amended statute a nullity. The majority's mistaken interpretation has real-life consequences for plaintiff, who is now denied the necessary financial resources to address his permanent injuries.

The issue is not about whether the amended statute should be retroactively applied; it should not. Rather, the issue is when the prospective application of that statute commences. The majority posits that GEICO's right to reimbursement accrued when it paid plaintiff PIP benefits, six months before the amended statute went to effect. Although the majority is correct about the accrual date, the amended statute subjected GEICO's right to reimbursement to the insured being made whole. As mentioned earlier, the amended statute went into effect before GEICO made a reimbursement claim. The accrual date did not give GEICO a vested right to a PIP reimbursement claim against its insured after passage of the amended statute.

Nothing in the amended statute suggests that the Legislature intended that, after the law's effective date, a PIP

8

carrier would be able to file a reimbursement claim that would strip an insured of PIP benefits already paid to defray medical expenses.  The Legislature could not have intended for another paraplegic or seriously injured insured to suffer under the pre-amendment statute while the PIP carrier was made whole.  Indeed, the PIP carrier here, GEICO, has received a windfall because plaintiff's mother dutifully paid premiums for the very benefits that the majority has withdrawn from her son.

In the end, the majority has failed to give the amended statute the true prospective effect intended by the Legislature and therefore allows one further injustice under the old statute.

## II.

For the reasons expressed, I respectfully dissent.