**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0329-19
A-1846-19

R.A. (a fictitious designation),

     Plaintiff-Respondent,

v.

WEST ESSEX REGIONAL
SCHOOL DISTRICT BOARD
OF EDUCATION, SUSSEX
COUNTY REGIONAL
TRANSPORTATION
COOPERATIVE, and WEST
ESSEX REGIONAL SCHOOL
DISTRICT,

     Defendants-Appellants,

and

G.L., JR., G.L., SR., and C.L.,

     Defendants-Respondents.
_____

G.T. (a fictitious designation),

     Plaintiff-Respondent,

v.

WEST ESSEX REGIONAL
SCHOOL DISTRICT BOARD
OF EDUCATION, SUSSEX
COUNTY REGIONAL
TRANSPORTATION
COOPERATIVE, and WEST
ESSEX REGIONAL SCHOOL
DISTRICT,

     Defendants-Appellants,

and

G.L., JR., G.L., SR., and C.L.,

     Defendants-Respondents.

_____

> Argued (A-0329-19) and Submitted (A-1846-19)
> October 1, 2020 – Decided August 30, 2021
>
> Before Judges Ostrer, Vernoia, and Enright.
>
> On appeal from an interlocutory order of the Superior
> Court of New Jersey, Law Division, Essex County,
> Docket Nos. L-8607-18 and L-4811-19.
>
> Jeffrey L. Shanaberger argued the cause for appellants
> (Hill Wallack, LLP, attorneys; Cherylee O. Melcher
> and Jeffrey L. Shanaberger, on the briefs).
>
> Craig J. Hubert argued the cause for respondents
> (Szaferman, Lakind, Blumstein & Blader, PC,
> attorneys; Craig J. Hubert and Thomas J. Manzo, on the
> briefs).

2

PER CURIAM

In these two cases, which we scheduled back-to-back and consolidate for purposes of this opinion, by leave granted defendants West Essex Regional School District Board of Education (Board of Education), Sussex County Regional Transportation Cooperative (Cooperative), and West Essex Regional School District (District) (collectively, "defendants") appeal from orders denying their motions to dismiss the respective complaints of plaintiffs R.A. and G.T. pursuant to Rule 4:6-2(e).[1] In denying defendants' motions, the court rejected defendants' contention that plaintiffs' causes of action should be dismissed based on their failure to timely serve notices of tort claim in accordance with the requirements of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. In denying defendants' motion in R.A.'s case, A-0329-19, the court did not address their argument that an asserted cause of action alleging a violation of the New Jersey Anti-Bullying Bill of Rights Act (Anti-

---

[1] We use initials to identify plaintiffs to protect their privacy and because records concerning alleged victims of sexual offenses are exempt from public disclosure. R. 1:38-3(c)(12); R. 1:38-3(d)(12); see also N.J.S.A. 2A:61B-1(f)(1). We also use initials to identify the alleged perpetrator of the sexual offenses, and his parents, because the record shows he was a juvenile at the time the offenses were allegedly committed. See N.J.S.A. 2A:61B-1(f)(1).

Bullying Act), N.J.S.A. 18A:37-13 to -37, should be dismissed because the statute does not authorize a private cause of action for tort liability or damages.

Based on our review of the record in light of the applicable legal principles, we reverse that portion of the court's order denying defendants' motion to dismiss the Anti-Bullying Act claim in R.A.'s case. We remand for entry of an amended order in G.T.'s case, A-1846-19, dismissing the Anti-Bullying claim because the court found the claim should be dismissed but did not provide for the dismissal in its order. We otherwise affirm the orders in both cases.

I.

R.A.'s and G.T.'s complaints assert identical causes of action arising out of similar but separately alleged facts. The complaints allege that R.A. and G.T. were sexually assaulted at different times by an older student, defendant G.L., Jr. (Glen), while on the school bus that transported them to and from West Essex Middle School during the 2012-2013 school year. The gravamen of plaintiffs' tort claims against defendants is that defendants knew or had reason to know Glen had a history of sexually assaultive and abusive behavior, and defendants negligently failed to protect them from Glen's alleged sexually assaultive actions while on bus rides to and from school.

A-0329-19

We review de novo a trial court's order to grant or deny a motion to dismiss pursuant to Rule 4:6-2(e), Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019), and apply the same standard as the trial court to determine whether the facts alleged in the complaint "set forth a claim upon which relief can be granted," Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). We do not owe any deference to the legal conclusions of the trial court. Dimitrakopoulos, 237 N.J. at 108.

Our review of a dismissal motion under Rule 4:6-2(e) "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint," Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)), and we do "not concern [ourselves] with [a] plaintiff['s] ability to prove the[] allegations," id. at 124-25. We "afford[] to [the] plaintiff[] 'every reasonable inference of fact[,]' . . . [and] 'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim.'" Major v. Maguire, 224 N.J. 1, 26 (2016) (quoting Printing Mart-Morristown, 116 N.J. at 746). If we can glean the basis for a cause of action, "then the complaint should survive this preliminary stage." Wreden, 436 N.J. Super. at 125. With these principles in

5

mind, we first summarize the factual allegations that are common to R.A.'s and G.T.'s complaints, and then detail the factual allegations unique to each plaintiff.

The District, Board of Education, and Cooperative are public entities within the meaning of the TCA. See N.J.S.A. 59:1-3. The District includes West Essex Middle School and West Essex High School.

During the 2012-2013 school year, R.A. and G.T. attended West Essex Middle School, and Glen was a tenth-grade student at West Essex High School. R.A., G.T., and Glen were transported to and from school each day on the same school bus, which was operated by Cooperative. Defendants G.L., Sr., and C.L. are Glen's parents.

R.A.'s Complaint

R.A. filed her complaint on June 28, 2019. It alleges that during the 2012-2013 school year, R.A. was thirteen years of age and an eighth-grade student at West Essex Middle School. In October 2012, Glen sat next to R.A. on the school bus, rubbed R.A.'s leg, and pulled her hand towards his leg. When R.A. pulled her hand away, Glen took his penis out of his pants and moved R.A.'s hand toward his exposed penis. R.A. shook her hand loose from Glen's grip and elbowed him in the chest. Glen then stopped touching plaintiff and moved away from her.

6

According to the complaint, at some undisclosed time, R.A. told her friend, who is identified as Jane Roe 1, about the assault. Jane Roe 1 told R.A. she had also been subject to a non-consensual touching by Glen. The complaint does not indicate when Jane Roe 1 had been allegedly subject to the touching by Glen.

R.A. turned eighteen years of age in July 2017. In May 2018, R.A. learned that another individual, who R.A. identifies as Jane Roe 2, had been sexually assaulted by Glen. R.A.'s complaint alleges Jane Roe 2 had also been a student at West Essex Middle School, but the complaint does not indicate whether the alleged assault of Jane Roe 2 occurred while she attended the school or while Glen attended school in the District. The complaint also does not state whether the alleged assault on Jane Roe 2 occurred before or after Glen's alleged assault on R.A. Jane Roe 2 reported Glen's alleged sexual assault to the Essex County Prosecutor's Office in May 2018.

The complaint also asserts that at some undisclosed time R.A.'s mother asked her about Jane Roe 2's allegations, "which had recently come to light," and R.A. told her mother about Glen's 2012 assault on her and Jane Roe 1's allegation that Glen assaulted her. The complaint further alleges R.A. "[e]ventually . . . learned of two other victims," identified as Jane Roe 3 and

Jane Roe 4, "who were sexually assaulted by" Glen during the 2012-2013 school year while they were students at West Essex Middle School. The complaint does not assert whether those alleged assaults were committed on a school bus, on school property, during the school day, or before or after Glen's alleged assault on R.A.[2]

Based on those factual assertions, R.A. alleged defendants "had actual and/or constructive notice of [Glen's] sexually violent behavior, the risk thereof, and propensity for committing acts of sexual violence." R.A. asserted causes of action against defendants for: negligence in failing to take reasonable care to monitor Glen, hire and train appropriate staff to supervise Glen and prevent his sexually assaultive and abusive conduct, and to provide adequate security for R.A. (Count Two); gross negligence and recklessness (Count Three); hostile environment sexual harassment under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50 (Count Four); and violating the

---

[2] The complaint further alleged that when Glen was seven years old, long prior to the 2012-2013 school year, he forced his four-year-old cousin to perform "sexually inappropriate acts" on him. That factual claim is made in support of R.A.'s causes of action against Glen's parents and is not pertinent to the causes of action asserted against defendants. R.A. does not allege in the complaint that defendants were aware of the alleged incident involving the four-year-old child.

Anti-Bullying Act (Count Five).[3]  R.A. also sought a declaratory judgment that her cause of action against defendants accrued no earlier than May 30, 2018, "[p]ursuant to the reasoning in Lopez v. Swyer, 62 N.J. 267 (1973)," (Count Six), and that a tort claims notice she served on defendants "on or about June 22, 2018" was timely under the TCA (Count Seven).

G.T.'s Complaint

G.T. filed an initial complaint on December 6, 2018, and a first amended complaint on July 26, 2019.  Represented by the same counsel as R.A., G.T.'s first amended complaint asserts identical causes of action against the identical parties based on facts that parallel R.A.'s, but are unique to G.T.[4]  The complaint alleges G.T. was an eighth-grade student at West Essex Middle School during the 2012-2013 school year.  G.T. was born in 1998 and turned fourteen years of age in December 2012.

---

[3]  Count One asserts a cause of action for battery against Glen only.
[4]  We refer to the allegations in G.T.'s first amended complaint.  That is the complaint defendants moved to dismiss under Rule 4:6-2(e).  As noted, the seven causes of action in G.T.'s complaint are identical to the seven causes of action in R.A.'s complaint, and the claims are asserted in the same sequential order.  The last three counts in G.T.'s complaint, however, are misnumbered as Counts Six, Seven, and Eight because G.T.'s complaint does not include a Count Five.  Thus, Counts Six, Seven, and Eight in G.T.'s complaint allege the same causes of action as those alleged in Counts Five, Six, and Seven of R.A.'s complaint.

A-0329-19

G.T. alleged she rode the bus to school each day, and Glen rode the bus as well. According to the complaint, on multiple occasions during the 2012-2013 school year, Glen sat next to G.T. on the bus and touched her buttocks and vaginal area "both over [her] pants and underneath [her] pants" without her consent or permission. G.T. alleged she "actively suppressed the memories of the assaults for years."

G.T. turned eighteen in December 2016. She alleged that in the fall of 2017, a friend mentioned a sexual assault to G.T., and, "[a]t that mention," she remembered Glen's name and began reliving the incidents of sexual assaults on the school bus. G.T. first reported Glen's alleged 2012-2013 sexual assaults to her parents on February 8, 2018. On the same day, G.T. reported the allegations to the police.

G.T. asserted that on May 30, 2018, she learned that two other female students at West Essex Middle School—identified as Jane Roe 1 and Jane Roe 2—had been sexually assaulted by Glen while on the school bus.[5] On May 31, 2018, G.T. learned from an individual identified as Jane Roe 3 that when she was four years old, approximately seven-year-old Glen "pulled her into a

---

[5] It is not possible to determine if the Jane Roe 1 and Jane Roe 2 referred to in G.T.'s complaint are the same or different individuals than those identified by the same names in R.A.'s complaint.

bathroom, and forced her to perform sexually inappropriate acts." The complaint also alleged that on June 7, 2018, G.T. learned Glen "sexually assaulted two other girls," identified as Jane Roe 4 and Jane Roe 5, on the school bus during the 2012-2013 school year.

Based on those factual allegations, G.T. asserted the identical seven causes of action against defendants as those asserted by R.A. In support of her cause of action for a declaratory judgment concerning the date of accrual of her claims, G.T. asserted that her tort claims against defendants did not accrue "until May 30, 2018, when it became apparent to [her] that the sexual assaults she suffered at the hands of" Glen "were due to" defendants' negligence. G.T asserted that prior to May 30, 2018, she knew herself to be Glen's victim, but it was not until she learned on that date of Glen's assaults on the other victims that she realized it was possible defendants "may have culpably caused her injuries." Based on the alleged May 30, 2018 date of accrual, G.T. also asserted she was entitled to a declaratory judgment that her June 22, 2018 service of a notice of tort claim on defendants was timely under the TCA.

Defendants' Motions to Dismiss the Complaints

Defendants separately moved to dismiss R.A.'s and G.T.'s complaints based on their alleged failures to serve timely notices of their tort claims as

11

required under the TCA. See N.J.S.A. 59:8-8. Defendants argued that plaintiffs claimed they were sexually assaulted by Glen while juveniles during the 2012-2013 school year; plaintiffs knew or had reason to know they were on a school bus owned or operated by defendants at that time; the accrual dates of plaintiffs' claims were the dates they respectively turned eighteen; and plaintiffs failed to serve their notices of tort claim within ninety days of their respective accrual dates as required under the TCA.

In a September 3, 2019 written opinion in R.A.'s case, and a November 22, 2019 written opinion in G.T.'s case, the court denied defendants' motions to dismiss under Rule 4:6-2(e).[6]

In its decision in R.A.'s case, the court reviewed the tort claims asserted in Counts Two and Three of the complaint, and explained that, accepting the facts alleged in the complaint as true, they set forth sufficient facts supporting the negligence and gross negligence causes of action asserted. The court found defendants' arguments supporting the motion were based on plaintiffs' alleged failures to comply with the TCA, and that the motions ignored the standard for dismissal under Rule 4:6-2(e). The court further found R.A.'s claim she was

---

[6] The motions were filed separately and at two different times in the two actions.

12                                                                    A-0329-19

subject to a hostile environment in school based on her gender was sufficient to state a claim under the LAD.

The court also explained the TCA requirement that a claimant asserting a tort claim against a public entity must file a notice of claim within ninety days of the date of accrual or the claimant will "be forever barred from recovering against [the] public entity." See N.J.S.A. 59:8-8. The court, however, did not address or determine the date of accrual of R.A.'s causes of action, or otherwise make any findings concerning the dates of accrual of her causes of action based on the facts alleged in the complaint. Instead, the court found that the proper inquiry under Rule 4:6-2(e) is to determine if the plaintiff alleged sufficient facts supporting the causes of action asserted, and it concluded R.A. had met that burden by pleading the elements of the causes of action for negligence, gross negligence, and violating the LAD alleged in the complaint.[7] Thus, the court

---

[7] In R.A.'s case, and also in G.T.'s case, it does not appear defendants moved to dismiss the declaratory judgment causes of action asserted in the complaints because, as defendants acknowledge in their briefs on appeal, their motions to dismiss were founded on their contention R.A. and G.T. failed to comply with the notice provisions of the TCA. See N.J.S.A. 59:8-8 to -9. Defendants do not argue that R.A.'s and G.T.'s asserted causes of action for declaratory relief are subject to the requirements of the TCA. In addition, the motion court did not address R.A.'s and G.T.'s declaratory judgment claims, and defendants do not argue on appeal the court erred by failing to do so. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (finding "[a]n issue not briefed on appeal is deemed waived").

A-0329-19

did not directly address defendants' argument that the complaint should be dismissed for failure to state a claim upon which relief could be granted under Rule 4:6-2(e) based on defendants' contention R.A. failed to adequately plead that she filed a timely notice of tort claim under the TCA.

Instead, the court noted the Legislature had enacted an amendment to the TCA eliminating the requirement that a claimant file a notice of tort claim against a public entity in an action for an injury resulting from the commission of a sexual assault, any crime of a sexual nature, a prohibited sexual act under N.J.S.A. 2A:30B-2, or sexual abuse as defined in 2A:61B-1. See N.J.S.A. 59:8-3(b); see also L. 2019, c. 120, § 8. The amendment was not in effect when R.A. and G.T. filed their respective complaints, when defendants filed the motions to dismiss, or when the court decided the motions in September and November 2019. As the motion court noted in its opinion in R.A.'s case, the amendment did not become effective until December 1, 2019. See L. 2019, c. 120, § 10 (codified at N.J.S.A. 2A:14-2c). Nonetheless, the court applied what it characterized as the intent of the amendment, and determined it would be incongruous to apply the notice provisions of the TCA to R.A.'s claims because the Legislature had enacted an amendment to the TCA, albeit one not yet in effect, rendering inapplicable the TCA's notice requirements in cases asserting

claims resulting from the commission of sexual offenses and abuse. The court entered an order denying defendants' motion to dismiss R.A.'s complaint under Rule 4:6-2(e).

Although the court's focus in each of its decisions is on defendants' claim plaintiffs failed to comply with the notice requirements of the TCA, defendants also sought dismissal of the Anti-Bullying Act claims asserted in Count Five of R.A.'s complaint and Count Six of G.T.'s complaint because the Anti-Bullying Act does not authorize a private cause of action. In its opinion in G.T.'s case, the court found the Anti-Bullying Act claim in Count Six of G.T.'s complaint should be dismissed because the Anti-Bullying Act does not provide a private cause of action, but the court's order in G.T.'s case erroneously does not provide for dismissal of Count Six of her complaint. In R.A.'s case, the court erred by failing to separately address in its opinion defendants' argument relating to the Anti-Bullying Act and by failing to dismiss the Anti-Bullying Act claim asserted in Count Five of R.A.'s complaint. See N.J.S.A. 18A:37-18 ("T[he Anti-Bullying A]ct shall not be interpreted to prevent a victim from seeking redress under any other available law either civil or criminal. Th[e Anti-Bullying A]ct does not create or alter any tort liability."); see also N.J.S.A. 18A:37-37 (same); Zelnick v. Morristown-Beard Sch., 445 N.J. Super. 250, 265 (Law Div. 2015)

A-0329-19

(explaining the Anti-Bullying Act, "by its own terms, does not create tort liability and therefore does not establish a standard of care"); <u>Dunkley v. Bd. of Educ.</u>, 216 F. Supp. 3d 485, 495 (D.N.J. 2016) (noting N.J.S.A. 18A:37-37 provides that the Anti-Bullying Act "does not create or alter any tort liability," and, as a result, it "cannot support an independent cause of action"). We therefore reverse the court's denial of defendants' motion to dismiss Count Five of R.A.'s complaint, remand for a modification of the order in G.T.'s case to reflect the dismissal of Count Six of her complaint, and next address defendants' claim the court erred by denying their motion to dismiss R.A.'s and G.T.'s tort claims based on plaintiffs' alleged failures to comply with the TCA's notice requirements.

As noted, in G.T.'s case, the court issued a written opinion mirroring the reasoning provided in R.A.'s case on the issues related to the TCA's notice requirements, and entered an order denying defendants' motion to dismiss G.T.'s complaint.[8] We later granted defendants' motion for leave to appeal from the orders in R.A.'s and G.T.'s cases, and scheduled the matters back to back.

---

[8] In its decision on defendants' motion in G.T.'s case, the court referenced and incorporated its reasoning for its denial of defendants' motion to dismiss in R.A.'s case. As noted, the court also granted defendants' motion to dismiss the Anti-Bullying Act claim asserted in Count Six of G.T.'s complaint.

II.

We begin by noting defendants' motions to dismiss were based on the singular contention that the tort claims in R.A.'s and G.T.'s complaints were barred because R.A. and G.T. failed to timely file notices of tort claim with defendants within ninety days of the accrual dates of their claims as required under N.J.S.A. 59:8-8. Although the motion court did not separately address each of the causes of action in the complaints, defendants' argument under the TCA does not support a dismissal of the asserted LAD claims because the TCA's notice of claim requirements are inapplicable to LAD claims. Richter v. Oakland Bd. of Educ., 246 N.J. 507, 539 (2021); Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 430 (1994); Fuchilla v. Layman, 109 N.J. 319, 330-32 (1988). We therefore affirm the court's order denying defendants' motions to dismiss the LAD claims asserted in Count Four of R.A.'s and G.T.'s complaints.

Similarly, Counts Six and Seven of R.A.'s complaint and Counts Seven and Eight of G.T.'s complaint do not assert tort claims for damages. Those counts assert causes of action for declaratory judgment related to the application of the TCA. Plaintiffs had no obligation to serve notices of tort claim under the TCA as a prerequisite to the assertion of those causes of action. See N.J.S.A.

17

59:1-4 (providing "[n]othing in [the TCA] shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees" (emphasis added)); see, e.g., First Am. Title Ins. v. Twp. of Rockaway, 322 N.J. Super. 583, 595-96 (Ch. Div. 1999) (finding that a cause of action seeking a declaration as to title of property purchased from a municipality and a return of the purchase price on equitable grounds is not a claim subject to the requirements of the TCA). Because the TCA's requirements apply solely to tort claims for damages, the court properly denied defendants' Rule 4:6-2(e) motions to dismiss Counts Six and Seven of R.A.'s complaint and Counts Seven and Eight of G.T.'s complaint.

Defendants' dismissal motions, founded on plaintiffs' purported untimely filing of the notices of claim under N.J.S.A. 59:8-8, are necessarily limited to the negligence and gross negligence claims asserted in Counts Two and Three of both complaints. They are the only tort claims asserted against defendants. Prior to addressing defendants' motions, we briefly summarize the requirements applicable to service of a notice of claim under the TCA.

"As a prerequisite to proceeding with a tort claim against a public entity, a plaintiff must file a notice of claim within ninety days of the accrual of the cause of action." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133

(2017) (citing N.J.S.A. 59:8-8); see also H.C. Equities, LP v. Cnty. of Union, ___ N.J. ___, ___ (2021) (slip op. at 2, 20). A plaintiff may file a late notice of claim within one year of the accrual of the claim, provided a court finds there is a showing of extraordinary circumstances and the public entity has not been substantially prejudiced. Ben Elazar, 230 N.J. at 133 (citing N.J.S.A. 59:8-9); see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 346 (2019). The failure to file a notice of claim within ninety days, or within one year under extraordinary circumstances, bars the claimant from bringing the tort claim against the public entity. N.J.S.A. 59:8-8(a).

The TCA defines "accrual" as "the date on which the claim accrued and shall not be affected by the notice provisions contained herein." N.J.S.A. 59:8-1. "The provision 'does not define the date of accrual in any significant way, [but] the comment to that section states that "[i]t is intended that the term accrual of a cause of action shall be defined in accordance with existing law in the private sector."'" Ben Elazar, 230 N.J. at 134 (alterations in original) (quoting Beauchamp v. Amedio, 164 N.J. 111, 116 (2000)). The "law in the private sector" defining the accrual date of a cause of action generally

> holds that a claim accrues on the date on which the
> underlying tortious act occurred. However, that same
> common law allows for delay of the legally cognizable
> date of accrual when the victim is unaware of his [or

19

her] injury or does not know that a third party is liable for the injury. By operation of the discovery rule, the accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his [or her] injury or does not know that a third party is responsible for the injury.

[H.C. Equities, LP, ___ N.J. at ___ (slip op. at 20) (quoting Ben Elazar, 230 N.J. at 134).]

"Generally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place." Beauchamp, 164 N.J. at 117. There is, however, an "exception to that well[-]established notion of accrual . . . where the victim either is unaware that he [or she] has been injured or, although aware of an injury, does not know that a third party is responsible." Ibid.

The discovery rule applies to the TCA's notice requirements, McDade v. Siazon, 208 N.J. 463, 474-75 (2011), and it may "delay[] the accrual of a cause of action until 'the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim.'" Worthy v. Kennedy Health Sys., 446 N.J. Super. 71, 87 (App. Div. 2016) (quoting Baird v. Am. Med. Optics, 155 N.J. 54, 66 (1998)). "Whether the discovery rule applies depends on 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he

20

or she was injured due to the fault of another.'" Ben Elazar, 230 N.J. at 134 (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)).

The TCA also provides the date of accrual for a minor's claim is tolled until the minor reaches the age of eighteen. N.J.S.A. 59:8-8. The tolling of the date of accrual applies to the notice of claim requirements and the statute of limitations under the TCA. See Lebron v. Sanchez, 407 N.J. Super. 204, 214 (App. Div. 2009); Vedutis v. Tesi, 135 N.J. Super. 337, 340-41 (Law Div. 1975), aff'd o.b., 142 N.J. Super. 492 (App. Div. 1976).

A defense based on a plaintiff's alleged failure to timely notify a public entity of a tort claim is an affirmative defense. Hill v. Middletown Bd. of Educ., 183 N.J. Super. 36, 40 (App. Div. 1982); cf. Henebema v. Raddi, 452 N.J. Super. 438, 450 (App. Div. 2017). The defendant bears the burden of pleading and proving a failure to comply with the TCA's notice requirements. See Hill, 183 N.J. Super. at 40-41; Margolis & Novack, Claims Against Public Entities, cmt. on N.J.S.A. 59:1-2 (2020) ("As to the procedure for raising the immunities and defenses provided by the [TCA] to public entities, the burden is placed upon the entity to both plead and prove them."); cf. Maison v. N.J. Transit Corp., 245 N.J. 270, 298 (2021); Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009); Kolitch v. Lindedahl, 100 N.J. 485, 497 (1985) ("It is well established that the

burden is on the public entity both to plead and prove its immunity under [the TCA] . . . ."). Thus, when a defendant fails to timely raise an affirmative defense, such as a plaintiff's failure to comply with the TCA's notice requirements, the defendant ordinarily waives the defense. See, e.g., Hill, 183 N.J. Super. at 40 (noting a defendant who fails to plead the defense of failure to file a notice of tort claim "may be found to have waived the protection thereof"); Henebema, 452 N.J. Super. at 443 (finding the public entity defendants waived their affirmative defenses by waiting years to raise them); see also Buteas v. Raritan Lodge #61 F. & A.M., 248 N.J. Super. 351, 363-64 (App. Div. 1991) (explaining a defendant who fails to plead an affirmative defense ordinarily waives it).

As explained by Judge Pressler in Buteas, a motion to dismiss under Rule 4:6-2(e) "goes to the legal sufficiency of the pleading, ordinarily connoting the failure of the complaint to state either a cognizable cause of action or all of the elements of a cognizable cause of action." 248 N.J. Super. at 363. In contrast, an affirmative defense assumes the legal sufficiency of a plaintiff's complaint, but is a means of avoiding liability for culpable conduct based on a defendant's separately pleaded "statement of facts constituting an avoidance or affirmative defense and not merely by legal conclusion." JB Pool Mgmt., LLC v. Four

22

Seasons at Smithville Homeowners Ass'n, 431 N.J. Super. 233, 250 (App. Div. 2013) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-4 (2013)); see also Faul v. Dennis, 118 N.J. Super. 338, 342 (Law Div. 1972) ("An affirmative defense generally involves the introduction of new matter which is not shown by the plaintiff's own proof or pleading."). Thus, a plaintiff may sufficiently plead a cause of action in his or her complaint even if "an affirmative defense might [be] evident from the face of the complaint itself." Buteas, 248 N.J. Super. at 364.

The motion court determined Counts Two and Three of the complaints allege sufficient facts to establish a cognizable claim for the negligence causes of action asserted. The elements of a cause of action for negligence are "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). Based on our review of the complaints, we too are satisfied Counts Two and Three allege sufficient facts supporting each of the elements of a negligence claim. Defendants do not argue otherwise.

Plaintiffs were under no obligation to address or allege facts disproving the elements of an affirmative defense defendants are obligated to plead and prove. Compliance with the notice requirements of the TCA is not an element

A-0329-19

of a negligence cause of action against a public entity, and defendants do not point to any legal authority to the contrary. Plaintiffs fulfilled their obligation to plead cognizable causes of action in Counts Two and Three of the complaints by alleging facts addressing each of the required elements of the negligence claims asserted. See Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010) (explaining the legal sufficiency of a pleading under Rule 4:6-2(e) "requires allegation[s] of all the facts that the cause of action requires"). For that reason alone, we affirm the court's denial of defendants' Rule 4:6-2(e) motions as to the negligence claims asserted in Counts Two and Three of R.A.'s and G.T.'s complaints.

Our determination is not a finding that R.A.'s and G.T.'s June 22, 2019 notices of tort claim were timely filed as required under N.J.S.A. 59:8-8, or that R.A. and G.T. alleged sufficient facts to support the claims for declaratory relief in Counts Six and Seven of R.A.'s complaint and Counts Seven and Eight of G.T.'s complaint.[9] We determine only that the court properly denied defendants'

---

[9] As noted, defendants moved to dismiss Counts Six and Seven of R.A.'s complaint and Counts Seven and Eight of G.T.'s complaint solely on the basis that plaintiffs were barred from asserting the declaratory judgment claims due to plaintiffs' alleged failures to comply with the TCA's notice requirements. We uphold the court's rejection of defendants' argument and its denial of the motions on that basis. Our decision does not preclude defendants from moving to dismiss

motions to dismiss the tort claims in the complaints because plaintiffs had no obligation to plead compliance with the TCA's notice requirements in the first instance, and, as a result, their alleged failure to adequately plead facts demonstrating their compliance could not support a finding they failed to state a claim upon which relief may be granted under Rule 4:6-2(e).  To conclude otherwise would be to improperly shift the burden to plaintiffs to plead facts disproving an affirmative defense, and plaintiffs have no such obligation.  See generally Printing Mart-Morristown, 116 N.J. at 744-46, 750-72 (finding a Rule 4:6-2(e) motion must be denied when the complaint alleges sufficient facts supporting each of the elements of a cause of action).

We recognize the defense of failure to comply with the TCA's notice requirements is sometimes compared to the defense of the statute of limitations. See, e.g., Ben Elazar, 230 N.J. at 134-35 (discussing statute of limitations tolling principles in the context of determining the date of accrual for notice of claim purposes).  We further appreciate "[t]here is authority for the proposition that

those counts for failure to state a claim on which relief may be granted under Rule 4:6-2(e) based on a claim the allegations in the complaints do not set forth a cognizable cause of action for the relief sought.  That claim was not made before the motion court, and is not made on appeal.  We therefore do not address it and do not offer any opinion on it.  Those motions, if made, shall be decided by the court in the first instance based on the record presented by the parties.

A-0329-19

where the relevant facts are not in dispute on that issue, a statute of limitations defense is sufficiently akin to failure to state a claim as to permit its disposition by way of a motion under [Rule] 4:6-2(e)." CKC Condo. Ass'n v. Summit Bank, 335 N.J. Super. 385, 387 n.1 (App. Div. 2000); see also O'Connor v. Altus, 67 N.J. 106, 116 (1975); Rappeport v. Flitcroft, 90 N.J. Super. 578, 580-81 (App. Div. 1966).

Here, the parties dispute the dates of accrual of R.A.'s and G.T.'s causes of action. And, as noted, plaintiffs were not obligated to plead all of the facts in the complaints supporting their compliance with the TCA's notice provisions, including all of the facts pertinent to a final determination of the accrual dates of their respective tort claims against defendants. We must give plaintiffs the benefit of all reasonable inferences based on the facts alleged in the complaint, and we shall not dismiss a complaint under Rule 4:6-2(e) that suggests a fundament of a legally cognizable claim. See Printing Mart-Morristown, 116 N.J. at 746, 771-72. Given all of those circumstances and limitations, it is not reasonable or proper to definitively determine the accrual dates of plaintiffs' tort claims against defendants, which clearly implicate the discovery rule, based solely on the facts alleged in the complaints. Thus, defendants bear the burden of proving plaintiffs' noncompliance with the TCA's notice provisions based on

competent, credible evidence outside of the pleadings. See Buteas, 248 N.J. Super. at 363-64; see, e.g., J.P. v. Smith, 444 N.J. Super. 507, 525-30 (App. Div. 2016) (finding the grant of the defendants' summary judgment motion dismissing the plaintiff's claims for noncompliance with the TCA's notice requirements was warranted when the competent evidence presented by the parties established the accrual date of the plaintiff's claims and the fact that she did not timely serve a notice of tort claim). We therefore affirm the court's order denying defendants' motions to dismiss the tort claims in R.A.'s and G.T.'s complaints under Rule 4:6-2(e) based on plaintiffs' purported failure to comply with the TCA's notice requirements.

## III.

Defendants also argue the court erred by denying their dismissal motions based on L. 2019, c. 120. In pertinent part, the legislation expanded the statute of limitations for claims made by sexual assault and abuse victims, N.J.S.A. 2A:14-2a; L. 2019, c. 120, § 2; relieved sexual assault claimants from complying with the TCA's notice requirements, N.J.S.A. 59:8-3(b); L. 2019, c. 120, § 8; and provided for a two-year period for filing claims based on sexual assaults and abuse that "would otherwise be barred" by the statute of limitations, N.J.S.A. 2A:14-2b(a); L. 2019, c. 120, § 9. Defendants claim the court's reliance on the

statute to excuse R.A.'s and G.T.'s alleged failures to comply with the TCA's notice requirements was erroneous because plaintiffs filed their complaints, and the court decided defendants' motions to dismiss, prior to the legislation's December 1, 2019 effective date.

The motion court recognized L. 2019, c. 120 had not yet become effective when the complaints were filed and when it decided defendants' dismissal motions. The court, however, did not conduct any analysis of the statute or whether it might be properly applied retroactively, on its future December 1, 2019 effective date, to plaintiffs' alleged failure to comply with the TCA's notice requirements. The court instead applied what it discerned to be the Legislature's intent to eliminate the TCA's notice requirements for claims against public entities arising from sexual assault and abuse. It then concluded that although L. 2019, c. 120 was not yet effective, the Legislature's intent should be applied to excuse any alleged failures by R.A. and G.T. to comply with the TCA's notice requirements.

In our view, it was error for the court to apply what it determined was the intent of a statute that had been enacted but which the court recognized was not yet effective. Indeed, until its effective date, the legislation could have been amended or repealed. Simple logic dictates that a motion should not be decided

based on either the letter or intent of a statute that, due to its future effective date, has no force of law when the motion is decided. See Phillips v. Curiale, 128 N.J. 608, 615 (1992) (noting "a court is to apply the law in effect at the time it renders its decision" (quoting Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974))).

"It is a well-established principle that an appellate court on direct review will apply the statute in effect at the time of its decision, at least when the [L]egislature intended that its modification be retroactive to pending cases." Kruvant v. Mayor & Council of Cedar Grove Twp., 82 N.J. 435, 440 (1980). Here, we recognize that L. 2019, c. 120, § 8, which added N.J.S.A. 59:8-3(b) to the TCA, is in effect at present. We therefore consider whether it was intended to be retroactive to pending cases and, thus, eliminated the requirement that R.A. and G.T. comply with the TCA's notice requirements for the prosecution of their tort claims against defendants.

N.J.S.A. 59:8-3(a), as amended by L. 2019, c. 120, § 8, states that "[e]xcept as otherwise provided in this section, no action shall be brought against a public entity or public employee under [the TCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." The procedure set forth in Chapter 8 of the

TCA includes the requirement that a claimant present a notice of claim "not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8.

As noted, however, L. 2019, c. 120, § 8 eliminated the TCA's notice of claim requirements for actions for injuries resulting from sexual crimes and certain sexual acts and sexual abuse. The legislation added the following provision to the TCA: "The procedural requirements of this chapter shall not apply to an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in [N.J.S.A. 2A:30B-2], or sexual abuse as defined in [N.J.S.A. 2A:61B-1]." N.J.S.A. 59:8-3(b); L. 2019, c. 120, § 8.

L. 2019, c. 120 was enacted on May 13, 2019, but was not made immediately effective. The legislation expressly provides that it "shall take effect on December 1, 2019." L. 2019, c. 120, § 10. Despite this clear expression of the statute's effective date, R.A. and G.T. argue it should be applied retroactively to their tort actions, both of which were filed prior to December 1, 2019, and both of which are founded on alleged torts occurring prior to that date.

"[W]hether a statute applies retroactively 'is a purely legal question of statutory interpretation.'" State v. J.V., 242 N.J. 432, 442 (2020) (quoting

30

Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). Thus, as with all questions of law, we review issues of statutory interpretation de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"When interpreting a statute, 'our overriding goal must be to determine the Legislature's intent.'" Johnson, 226 N.J. at 386 (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 586 (2013)). "[G]enerally, the best indicator of [the Legislature's] intent is the statutory language." Garden State Check Cashing Serv., Inc. v. N.J. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the plain language leads to a clear and unambiguous result, then our interpretative process is over." Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting Johnson, 226 N.J. at 386). "[I]f, [however,] there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019) (first alteration in original) (quoting DiProspero, 183 N.J. at 492-93). "We construe the statutory language 'in context with related provisions so as to give sense to the legislation as a whole.'" Finkelman v. Nat'l Football League, 236 N.J. 280, 289 (2019) (quoting Spade, 232 N.J. at 515).

31

"Generally, newly enacted laws are applied prospectively," Johnson, 226 N.J. at 387 (citing James v. N.J. Mfrs. Ins., 216 N.J. 552, 556 (2014)), "based on 'long-held notions of fairness and due process,'" ibid. (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45 (2008)). This approach, however, "is not to be applied mechanistically to every case." Ibid. (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)). "Rather, '[t]wo questions inhere in the determination whether a court should apply a statute retroactively.'" Ibid. (alteration in original) (quoting Twiss v. State, 124 N.J. 461, 467 (1991)). "The first question is whether the Legislature intended to give the statute retroactive application." Ibid. (quoting Twiss, 124 N.J. at 467). "If so, the second question is whether retroactive application is an unconstitutional interference with 'vested rights' or will result in a 'manifest injustice.'" Ibid. (quoting Twiss, 124 N.J. at 467). "Both questions must be satisfied for a statute to be applied retroactively." Ibid.

We will find retroactive application of a law is warranted under three circumstances. First, retroactive application is appropriate where "the Legislature provided for retroactivity expressly, either in the language of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to 'make the statute workable or to give it the most sensible

interpretation.'" J.V., 242 N.J. at 444 (quoting Gibbons, 86 N.J. at 522). "Implied retroactivity may be found from the statute's operation when retroactive application is necessary to fulfill legislative intent." James, 216 N.J. at 564.

Second, retroactive application is warranted when "the statute is ameliorative or curative." J.V., 242 N.J. at 444 (quoting Gibbons, 86 N.J. at 523). "[T]he term 'ameliorative' refers only to criminal laws that effect a reduction in a criminal penalty." Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 196 (App. Div. 2019) (quoting State in Interest of J.F., 446 N.J. Super. 39, 54 (App. Div. 2016)). Meanwhile, a "curative" law is "designed to 'remedy a perceived imperfection in or misapplication of the statute.'" Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020) (quoting James, 216 N.J. at 564). "[A]n amendment is curative if it does 'not alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." Ardan v. Bd. of Review, 231 N.J. 589, 611 (2018) (alterations in original) (quoting James, 216 N.J. at 564). "Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration." Ibid. (quoting James, 216 N.J. at 564). In contrast, an amendment to a statute will "not [be] considered 'curative' merely because the Legislature has altered a

statute so that it better serves public policy objectives." Pisack, 240 N.J. at 372 (quoting Ardan, 231 N.J. at 612).

Third, retroactive application of a law is justified when "the parties' expectations warrant retroactive application." J.V., 242 N.J. at 444. When determining whether the expectations of the parties warrant retroactivity, "a court will look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law." Johnson, 226 N.J. at 389. The "expectation of retroactive application 'should be strongly apparent to the parties,'" and reliance on pending legislation is not sufficient to be reasonable. Ibid. (quoting James, 216 N.J. at 573).

Applying these principles, we cannot conclude N.J.S.A. 59:8-3(b) is retroactive as ameliorative legislation because it does not amend any criminal law or affect any criminal penalty. See Perry, 459 N.J. Super. at 196. Similarly, N.J.S.A. 59:8-3(b) cannot be properly deemed curative because it does not remedy an error in the TCA; it instead substantially alters the long-standing notice of claim requirements for actions for damages founded on sexual assault and other sexual acts and offenses. See Ardan, 231 N.J. at 611-12 (explaining an amendment to a statute was not "curative" where it was intended to expand the statute's reach).

Retroactive application of N.J.S.A. 59:8-3(b) is also not supported by the expectations of the parties. Indeed, neither R.A. nor G.T. make any claim they reasonably expected the statute would be retroactive and relieve them of their obligations to file notices of claim against defendants. And, in fact, both R.A. and G.T. recognized their obligations to comply with the notice requirements; they each filed motions for leave to file late notices of claim; their respective complaints included causes of action seeking a declaratory judgment that they satisfied the notice requirements; and they each alleged in their complaints that they complied with N.J.S.A. 59:8-8's notice requirements.[10]

Thus, to support a finding that N.J.S.A. 59:8-3(b) should be applied retroactively, we must first determine whether the Legislature expressly provided for its retroactive application or whether retroactivity is necessary to "make the statute workable or to give it the most sensible interpretation." J.V., 242 N.J. at 444 (quoting Gibbons, 86 N.J. at 522). Based on our review of L. 2019, c. 120, we conclude the Legislature clearly did not intend that N.J.S.A. 59:8-3(b) should be applied retroactively.

---

[10] Plaintiffs' respective motions for leave to file a late notice of tort claim were denied without prejudice by the court.

We begin with the plain language of L. 2019, c. 120, §10, which, as noted, provides that although enacted on May 13, 2019, the legislation, including N.J.S.A. 59:8-3(b), "shall take effect on December 1, 2019." Generally, a law's delayed effective date indicates a legislative intent to apply the law prospectively. See Twiss, 124 N.J. at 468 (explaining a law's "postponed effective date" indicates the Legislature's intent for that law to have prospective application). Thus, the law's delayed effective date supports the conclusion the Legislature intended that L. 2019, c. 120 apply prospectively. That the declared effective date was intended to apply only to lawsuits filed on or after December 1, 2019, except as otherwise provided, is supported by the Senate Committee Statement to the bill that was enacted as L. 2019, c. 120; the committee stated the legislation "would take effect on December 1, 2019, and beginning on that date lawsuits could be filed in accordance with the bill's provisions." S. Judiciary Comm. Statement to S. Comm. Substitute for S. 477, at 8 (Mar. 7, 2019) [hereinafter Statement to S. 477] (emphasis added).

Moreover, in its enactment of L. 2019, c. 120, the Legislature expressly provided in a variety of contexts for retroactive application of many of its provisions. That is, the Legislature was fully aware of potential issues concerning the retroactivity of the legislation, and it made express and precise

provision for retroactivity of certain portions of the legislation. Tellingly, for other parts of the legislation, the Legislature did not make any provision for retroactivity.

For example, the legislation's expansion of the statute of limitations for claims for injuries resulting from certain sexual crimes and abuse against minors under the age of eighteen is expressly made applicable to claims for injuries for sexual crimes and abuse that "occurred prior to, on or after the" December 1, 2019 effective date of L. 2019, c. 120. N.J.S.A. 2A:14-2a(a)(1); L. 2019, c. 120, § 2; see also Statement to S. 477, at 1-2 (explaining the extension of the "statute of limitations [for minors] is retroactive to cover past acts of abuse"). The statute further extended the statute of limitations for actions for injuries arising from sexual crimes and abuse "that occurred prior to, on or after the" December 1, 2019 effective date. N.J.S.A. 2A:14-2a(b)(1); L. 2019, c. 120, § 2.

L. 2019, c. 120 also changed the standard for liability under the New Jersey Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11, for claims against non-profit organizations for injuries resulting from sexual crimes and abuse. See N.J.S.A. 2A:53A-7(c); L. 2019, c. 120, § 5; see also Statement to S. 477, at 6 (explaining L. 2019, c. 120, § 5 codified that "non-profit organizations are expressly liable for willful, wanton[,] or grossly negligent acts" and established

"retroactive liability" for claims for injuries arising from sexual offenses and abuse under the extended statute of limitations under the legislation). The Legislature further provided that other amendments to the Charitable Immunity Act were retroactive; it enacted a provision stating a revision to the Act applied to "all civil actions for an injury resulting from an act that occurred prior to the [December 1, 2019] effective date of" the legislation. N.J.S.A. 2A:53A-7.5(b) (emphasis added); L. 2019, c. 120, § 6.

The legislation also added N.J.S.A. 2A:14-2b, which provided an additional two years from December 1, 2019 to file claims for damages arising from sexual offenses and abuse. N.J.S.A. 2A:14-2b(a); L. 2019, c. 120, § 9. The statute expressly provides for its retroactive application to actions for damages resulting from sexual offenses and abuse "that occurred prior to" December 1, 2019, and "which action would otherwise be barred through application of the [previously effective] statute of limitations." N.J.S.A. 2A:14-2b(a); L. 2019, c. 120, § 9; see also Statement to S. 477, at 7-8 (explaining L. 2019, c. 120, § 9 creates a two-year window for claims of sexual abuse that occurred prior to December 1, 2019 that would otherwise be time barred "even after applying (retroactively) the new extended statute of limitations," and noting that "[t]he same retroactive application of the amended Charitable

Immunity Act" would apply to lawsuits filed during the extended statute of limitations period).

In sum, L. 2019, c. 120 is replete with detailed and precise legislative determinations as to which provisions are retroactive. Thus, the Legislature clearly knew how to make statutory provisions retroactive, parsed through the legislation to address the retroactivity issue in unequivocal terms, and made express provision for retroactive application where it deemed appropriate. With regard to the enactment of N.J.S.A. 59:8-3(b), however, the Legislature opted not to provide for retroactivity, and we interpret that choice as a determination retroactivity was not intended. See GE Solid State, Inc. v. Dir., Div. of Tax'n, 132 N.J. 298, 308 (1993) (explaining that "where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded"). In sharp contrast to the other provisions of L. 2019, c. 120, there is simply no language associated with the enactment of N.J.S.A. 59:8-3(b) supporting a finding the Legislature intended to apply it retroactively. "As Justice LaVecchia . . . reminded us writing on behalf of a unanimous Supreme Court, '[i]t is not our job to engraft requirements [on a statute] that the Legislature did not include. It is our role to enforce the legislative intent as expressed through the words used by the Legislature.'" Opderbeck v. Midland

Park Bd. of Educ., 442 N.J. Super. 40, 58 (App. Div. 2015) (second and third alterations in original) (quoting Lippman v. Ethicon, Inc., 222 N.J. 362, 388 (2015)).

R.A. and G.T. attempt to breathe life into their retroactivity claim by asserting it would make little sense for the Legislature to retroactively apply the extended statute of limitations to claims otherwise barred by the prior statute of limitations, and not provide those same claimants with relief from the TCA's notice provisions. We reject the argument because, for the reasons noted, it is simply not supported by the plain language of the legislation. We also disagree with the notion that the Legislature's decision not to make N.J.S.A. 59:8-3(b) retroactive cannot be reasonably reconciled with the purposes of L. 2019, c. 120 and the TCA.

N.J.S.A. 59:8-3(b) addresses an issue unrelated to the extension of the statute of limitations. The TCA has always included the requirement that a claimant wait six months following the presentation of notice of claim before instituting suit. N.J.S.A. 59:8-8. The six-month period serves important public policies related to public entities. Our Supreme Court has explained N.J.S.A. 59:8-8 is intended

> (1) to allow the public entity at least six months for administrative review with the opportunity to settle

meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.

[Jones v. Morey's Pier, Inc., 230 N.J. 142, 155 (2017) (quoting McDade, 208 N.J. at 475-76).]

As the Court explained, in its enactment of N.J.S.A. 59:8-8, "the Legislature sought to afford to public entities an 'opportunity to plan for potential liability and correct the underlying condition.'" Ibid. (quoting McDade, 208 N.J. at 476).

L. 2019, c. 120 extended the statute of limitation for the filing of claims arising from sexual offenses and abuse and, in doing so, increased the financial exposure of public entities for such claims. It also eliminated the benefits of the six-month notice provision previously afforded public entities under N.J.S.A. 59:8-8. Thus, for public entities, the changes in the law implemented by L. 2019, c. 120 not only exposed them to increased claims, but it also deprived them of the "opportunity to plan for [the] potential liability" for actions that might be filed following the statute's December 1, 2019 effective date. Jones, 230 N.J. at 155 (quoting McDade, 208 N.J. at 476). The loss of that opportunity

is a harm unique to public entities and it deprives them of the benefits the Court has found were intended under N.J.S.A. 59:8-8. See ibid.

For those reasons, we do not find it unreasonable or nonsensical, as plaintiffs contend, for the Legislature to have treated the notice of tort claim requirements under the TCA differently than the retroactive application of the statute of limitations and other liability provisions under L. 2019, c. 120. By not making N.J.S.A. 59:8-3(b) retroactive, the Legislature simply chose to continue to apply the long-standing protections afforded to public entities to actions filed during the six-month period following L. 2019, c. 120's enactment in May 2019 to its December 1, 2019 effective date. In doing so, the Legislature provided public entities, in a manner consistent with N.J.S.A. 59:8-8, with the opportunity to plan for the potential financial liabilities each might face for new claims filed after the December 1, 2019 effective date.

In sum, and for the reasons noted, we do not find N.J.S.A. 59:8-3(b) applies retroactively to R.A.'s or G.T.'s tort claims. There is simply nothing in the language of L. 2019, c. 120 supporting a finding the Legislature intended that N.J.S.A. 59:8-3(b) should be applied retroactively, and the Legislature's decision to exclude N.J.S.A. 59:8-3(b) from the numerous provisions of the

42

legislation that were expressly made retroactive compels the conclusion that retroactive application of N.J.S.A. 59:8-3(b) was not intended.

Any of defendants' arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed in part as to A-0329-19. We reverse that portion of the court's order denying defendants' motion to dismiss the Anti-Bullying Act claim asserted in Count Five, affirm the remaining portions of the order, and remand for further proceedings on the remaining counts in the complaint. We do not retain jurisdiction.

Affirmed as to A-1846-19, but we remand for modification of the court's order to reflect the dismissal of the Anti-Bullying Act claim in Count Six, and for further proceedings on the remaining counts in the complaint. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION